(C.D. 4111)

Lyons Export & Import, Inc. *v.* United States

United States Customs Court, Second Division

(Decided October 29, 1970)

*Schwartz & Lidstrom* (*Barnes, Richardson & Colburn, Earl R. Lidstrom*, and *Joseph Schwartz* of counsel) for the plaintiff.

*William D. Ruckelshaus, Assistant Attorney General* (*Bernard J. Babb, trial attorney*), for the defendant.

Before RAO, FORD, AND NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in this case consists of tennis strings, "ELASCORD Blanc," imported in coils 660 feet in length, wound on plastic reels. It was assessed with duty at 25 cents per pound and 30 per centum ad valorem under item 316.60 of the Tariff Schedules of the United States, as cordage of man-made fiber. It is claimed to be classifiable at 8 per centum ad valorem under item 734.88 of said tariff schedules, as lawn-tennis equipment and parts thereof, or at 20 per centum ad valorem under item 771.55 of said tariff schedules, as profile shapes wholly or almost wholly of rubber or plastics, not of cellulosic plastics materials, or of acrylic resin or casein.

Those provisions of said tariff schedules are as follows:

Cordage:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

316.60    Of man-made fibers_____ 25¢ per lb.+
                                                        30% ad val.

Lawn-tennis equipment, and parts thereof:

* * * * * * *

734.88    Other _____ 8% ad val.

Film, strips, sheets, plates, slabs, blocks, fila-
ments, rods, seamless tubing, and other
profile shapes, all the foregoing wholly
or almost wholly of rubber or plastics:

* * * * * * *

Not of cellulosic plastics materials:

* * * * * * *

Other:

771.45            Of acrylic resin_____ * * *
771.50            Of casein_____ * * *
771.55            Other _____ 20% ad val.

The record herein consists of the testimony of one witness and three exhibits.

Arthur R. Bjorkman, president of Victor Sports, Inc., and vice-president of Victor Surgical Gut Manufacturing Company, testified that the merchandise was entered for the account of the latter firm, which processes animal intestines for surgical sutures and tennis gut and also sells synthetically manufactured tennis articles. He produced a sample of a coil of 15-gauge Elascord tennis string on a plastic reel. (Exhibit 1.) He stated that he had personally been engaged in the sale of this product; that it was sold by the importer to Victor Sports, Inc., which resold to sporting goods dealers and tennis professionals.

The witness had observed the use of the merchandise for stringing tennis racket frames in professional shops and retail stores. He testified:

> * * * It's used as a tennis string. The player comes into the retail store, in other words, a customer of Victor Sports, Inc., and he selects a string. He may select Elascord to be strung into the frame that he purchases. It's a custom job. A good player will select any kind of string he wishes.

He explained that, in stringing a tennis frame, the frame is placed in a vise, and the strings are run through each hole in a tension of 55 to 60 pounds until the stringing is complete. He said that the equip-

ment necessary to play tennis includes a tennis racket, balls, a net, and a tennis court, and that when strings on a tennis racket are broken, they are cut out and the racket is restrung.

Mr. Bjorkman testified that the importer is the exclusive distributor of Elascord in the United States and that it has only one customer, Victor Sports, Inc. The latter sells the product to its customers in the package as imported. Elascord is used only for stringing tennis rackets and not squash rackets. The witness did not know of any other manufacturers of similar merchandise in France and of only one in the United States. According to the witness, that firm's product is used solely for stringing tennis rackets.

A catalogue of Victor Sports, Inc. was received in evidence as defendant's exhibit A. It lists 15-gauge gut for squash rackets but the witness testified that there is a difference between nylon and gut and that Elascord is used only for stringing tennis rackets.

The primary question at issue is whether the material as imported in coils 660 feet in length is classifiable for tariff purposes as cordage of man-made fiber or as lawn-tennis equipment or parts thereof.

No evidence has been presented as to the composition of the imported tennis string. It was classified as a product of man-made fiber and plaintiff does not dispute that it is a synthetic material. It appears to consist of a core which has been coated with other material. Defendant claims that it falls within the statutory definition of cordage in schedule 3, part 2, headnote 1(a) :

> (a) the term *"cordage"* means assemblages of textile fibers or yarns, in approximately cylindrical form and of continuous length, whether or not bleached, colored, or treated, designed and chiefly used as an end product, and comprising cable, rope, cord, and twine, * * *.

Plaintiff argues that the merchandise is not cordage within this definition on the ground that it has been coated. However, the term "bleached, colored or treated" has been defined in headnote 1(d) to mean

> that the condition of the cordage or any of its constituent fibers or yarns has been affected by bleaching or coloring processes; by surface treatments such as polishing, glazing, coating, or filling; or by the application of grease or other nonfibrous substances (except oil) for any purpose, including rendering the cordage more able to withstand or repel fire, insects, rodents, mildew or rot; * * *.

We find, therefore, that the merchandise falls within the definition of cordage in schedule 3, part 2.

Plaintiff claims further that the imported merchandise is excepted from classification as cordage of man-made fibers because "racket

strings put up and packaged for retail sale" are not covered by the provisions for man-made fibers in schedule 3, part 1, subpart E. The headnotes to that subpart provide, *inter alia:*

    1. The provisions of this subpart do not cover—

    \*      \*      \*      \*      \*      \*      \*

    (viii) fishing line put up and packaged for retail sale (see part 5B of schedule 7);
    (ix) racket strings put up and packaged for retail sale (see part 5B of schedule 7);

    \*      \*      \*      \*      \*      \*      \*

    2. (a) For the purposes of the tariff schedules, the term *"man-made fibers"* refers to the filaments, strips, and fibers covered in this subpart.

Therefore, the provision for cordage of man-made fibers does not include "racket strings put up and packaged for retail sale."

The superior heading to item 734.88 (schedule 7, part 5D) covers lawn-tennis equipment and parts thereof. Tennis rackets are necessary equipment for playing the game of tennis and strings are necessary parts of tennis rackets. Thus, tennis racket strings are parts of lawn-tennis equipment. They are not taken out of classification as such by virtue of General Interpretative Rule 10(ij) which states that a provision for parts does not prevail over a specific provision for such part, since the provision for cordage is a general one and not a specific provision for racket strings. *United States* v. *Andrew Fisher Cycle Co., Inc.,* 57 CCPA 102, C.A.D. 986 (1970). Nor does it appear that the provisions for cordage, a product which comes in various forms, such as cable, rope, cord and twine, and has many uses, are more specific than those for lawn-tennis equipment, which is used for one specific purpose.

Nevertheless, the racket strings of man-made fibers classifiable under schedule 7, part 5D, are limited to those put up and packaged for retail sale.

A similar limitation is found in headnote 1(viii), schedule 3, part 1E, as to fishing line and special provisions for such fishing line are found in items 731.40–731.44. The Tariff Classification Study of November 15, 1960 (schedule 7, part 5, p. 275) points out that these provisions "have been limited to fishing line 'put up and packaged for retail sale' to facilitate their identification, as they are otherwise indistinguishable from yarns and cordage." Subpart 5D of schedule 7, which includes the provisions for lawn-tennis equipment and parts, contains no special provisions for racket strings packaged for retail sale nor is there any specific mention of such strings in the Tariff Classification Study. However, all parts of a statute must be read to-

gether and all relevant headnotes are to be considered in determining Congressional intent. *R. H. Macy & Co., Inc.* v. *United States*, 57 CCPA 115, C.A.D. 988 (1970). We conclude that it was the intent of Congress that tennis racket strings of man-made fiber put up and packaged for retail sale be classified under item 734.88 (schedule 7, part 5D), as other lawn-tennis equipment and parts, and that tennis racket strings of man-made fiber, not so packaged, be classified under item 316.60 as cordage of man-made fiber. This construction has been applied administratively. See 100 Treas. Dec. 625, 632, T.D. 56502(38), which states:

> A material approximately .058 inch in diameter (15 gauge) composed of multifilament continuously extruded man-made fiber yarns of white and blue color, encased in a hollow tube of man-made fiber, the white and blue filaments being plied so that the finished product presents a spiral effect, if imported in lengths of 35 feet, the amount required for stringing of one tennis racket, classifiable under the provision for Lawn-tennis equipment, and parts thereof: * * * Other, in *item 734.88*, TSUS. If imported in lengths of 660 feet, on reels, classifiable under the provision for Cordage: * * * Of man-made fibers, in *item 316.60*, TSUS. Bureau letter dated May 5, 1965.

While plaintiff claims that the imported merchandise is packaged for retail sale, the record does not support this statement. It has been shown only that the coil is sold, as packaged, to sporting goods dealers and tennis professionals. The individual customer may select Elascord when he brings in his racket to be restrung, but there is no evidence that he buys a whole coil. In fact, the Victor catalogue, exhibit A, indicates the contrary. It lists string per set of 22 feet and 11 feet, and per string of 22 feet. It also lists coils of 35 feet and reels of 660 feet and 1800 feet. It would be unreasonable to assume, without evidence, that a reel of 660 feet—enough to string about 20 tennis rackets—is a retail package. Thus, plaintiff's claim that the merchandise is classifiable as parts of lawn-tennis equipment has not been sustained.

Plaintiff's claim for classification under item 771.55 is likewise untenable. That provision is limited to certain profile shapes of rubber or plastics, not of cellulosic plastics material and not of acrylic resin nor casein, but no evidence has been presented to show the material of which the merchandise is made.

For the reasons stated, the protest is overruled. Judgment will be entered for the defendant.