59 CCPA

**LYONS EXPORT & IMPORT, INC.,**
**Appellant.**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5447.**

United States Court of Customs
and Patent Appeals.

June 15, 1972.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellant. Earl R. Lidstrom, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Gilbert Lee Sandler, New York City, for United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

RE, Judge.

This is an appeal from a decision and judgment of the United States Customs Court [1] which sustained the Collector of Customs' classification of imported tennis string, "Elascord Blanc," as cordage of man-made fibers under item 316.60 of the Tariff Schedules of the United States. The merchandise is imported from France in coils of 660 feet in

I. Lyons Export & Import, Inc. v. United States, 65 Cust.Ct. 394, C.D. 4111 (1970).

length, and is wound on plastic reels. Although the precise composition of the merchandise is not indicated, it is not disputed that it is a synthetic material.

Appellant's contention in the court below, and its principal argument here, is that the imported tennis string should not have been classified as cordage of man-made fibers but rather as lawn-tennis equipment and parts thereof under item 734.88, TSUS. It urges that the imported merchandise is "put up and packaged for retail sale" and, therefore, should be classified under the applicable provisions for lawn tennis equipment and parts pursuant to headnote 1(ix) of Schedule 3, Part 1, Subpart E.

The Government notes that Congress has expressly defined "cordage" as "assemblages of textile fibers or yarns, in approximately cylindrical form and of continuous length, whether or not bleached, colored, or treated, designed and chiefly used as an end product, and comprising cable, rope, cord, and twine" (Schedule 3, part 2, headnote 1(a)), and maintains that the merchandise falls squarely within that statutory definition. The Government also asserts that appellant's challenge to the applicability of the "cordage" provision is based on its unproven contention that the merchandise is "put up and packaged for retail sale." Hence, it contends that the appellant has neither established the correctness of the claimed classification, nor rebutted the presumed correctness of the classification of the customs officials.

The following are the pertinent provisions of the Tariff Schedules of the United States:

```
Schedule 3, Part 1, Subpart E—Man-
    made Fibers
  Subpart E headnotes:
    1.  The provisions of this subpart
        do not cover—
      *     *     *     *     *     *
      (ix) racket strings put up and
           packaged for retail sale
           (see part 5D of schedule
           7)  *   *   *
```

```
Classified under:
  Schedule 3, Part 2—Cordage
    Cordage:
      *    *    *    *    *    *
    316.60  Of man-made fibers .... 25¢ per lb. +
                                       30% ad val.
Claimed under:
  Schedule 7, Part 5
    Subpart D—Games and Sporting Goods
      Lawn-tennis equipment, and parts
        thereof:
      *    *    *    *    *    *
    734.88  Other ................ 8% ad val.
```

Although appellant has maintained that the tennis string is packaged for retail sale, the Customs Court found that it failed to sustain its burden of proof on this crucial point, stating:

> While plaintiff claims that the imported merchandise is packaged for retail sale, the record does not support this statement. It has been shown only that the coil is sold, as packaged, to sporting goods dealers and tennis professionals. The individual customer may select Elascord when he brings in his racket to be restrung, but there is no evidence that he buys a whole coil. In fact, the Victor [Sports] catalogue * * * indicates the contrary. It lists string per set of 22 feet and 11 feet, and per string of 22 feet. It also lists coils of 35 feet and reels of 660 feet and 1800 feet. It would be unreasonable to assume, without evidence, that a reel of 660 feet—enough to string about 20 tennis rackets—is a retail package. Thus, plaintiff's claim that the merchandise is classifiable as parts of lawn-tennis equipment has not been sustained.

The words "racket strings put up and packaged for retail sale," used in the pertinent headnote, are not defined in the Tariff Schedules, the Tariff Classification Study, nor in the United States Tariff Commission's Summaries of Trade and Tariff Information.

Under these circumstances we have examined the various lexicographic definitions to ascertain the meaning of "re-

tail" and "retail sale". The following definitions have proven helpful:

### WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1968

retail. 1: to sell in small quantities (as the single yard, pound, gallon): to sell directly to the ultimate consumer (cloth) (groceries) * * *

retail: the sale of commodities or goods in small quantities to ultimate consumers—opposed to WHOLESALE.

### WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE, College Edition 1964

retail: the sale of goods or articles individually or in small quantities directly to the consumer: opposed to *wholesale.*

The courts have relied upon these and other lexicographic definitions in determining the meaning of the word "retail". They have also found it necessary to determine whether sales were "retail" or "wholesale". In Jenkins Brothers v. United States, 25 CCPA 90, 96, T.D. 49093 (1937), this court quoted the definition found in the Funk & Wagnalls Standard Dictionary which states that "retail" is the " * * * selling of goods in small quantities especially by those who have bought in large quantities to resell at a profit." "Wholesale," on the other hand, refers to sales of a given item in larger quantities than a corresponding "retail" sale. Hence, wholesale sales denote " 'selling * * * to retailers or jobbers rather than consumers.' " Montgomery Ward & Co. v. United States, 26 Cust.Ct. 642, 645 (1951).

The Supreme Court of the United States in Roland Electrical Co. v. Walling, 326 U.S. 657, 674, 66 S.Ct. 413, 421, 90 L.Ed. 383 (1946), quoted with approval a statement from the Encyclopedia of Social Sciences (Vol. 13, p. 346) that the " * * * distinguishing feature of the retail trade * * * consists in selling merchandise to ultimate consumers." It was noted that the distinction between "retail" and "wholesale" is not merely between the size and volume of the sales, but also between the types of purchasers. Whereas the wholesale purchaser is influenced by a profit or business motive, the retail purchaser "is actuated solely by a desire to satisfy his own personal wants or those of his family or friends through the personal use of the commodity." (Beckman and Engle in Wholesaling Principles and Practice (1937), p. 25, quoted in 326 U. S. at 674, 66 S.Ct. 413). It is therefore made clear that sales to a customer, who purchases goods for the purpose of resale "in one form or another," constitutes "wholesaling" and not "retailing." (Encyclopedia of Social Sciences, Vol. 15, p. 411, quoted in 326 U.S. at 674, 66 S.Ct. 413). In the *Roland Co.* case, the Supreme Court also stated that "Governmental usage makes the same distinction on the basis of use for which the goods are purchased," and, among others, quoted from a Bureau of Census publication that sales of goods to "professional users" are "wholesale sales."

Bearing the foregoing in mind, it cannot be said that the court below erred in concluding that only tennis string put up and packaged for sale in small quantities for ultimate consumers was to be classified as lawn-tennis equipment, and parts thereof.

An examination of the record reveals that, at the trial, appellant succeeded in showing only that Elascord is sold to "sporting goods dealers and the tennis professional." It did not prove that these were sales to the ultimate consumer. Consequently the Customs Court could not have found that the merchandise consisted of "racket strings put up and packaged for retail sale." Therefore, since it cannot be said that the Customs Court erred on the evidence before it, we affirm.

It is to be noted that the construction given by the Customs Court to the entire statutory scheme is in accord with the administrative ruling of the Treasury Department which applies to the

merchandise at bar. The ruling states (100 Treas. Dec. 625, 632):

> A material approximately .058 inch in diameter (15 gauge) composed of multifilament continuously extruded man-made fiber yarn of white and blue color, encased in a hollow tube of man-made fiber, the white and blue filaments being plied so that the finished product presents a spiral effect, if imported in lengths of 35 feet, the amount required for stringing of one tennis racket, classifiable under the provision for Lawn-tennis equipment, and parts thereof: * * * Other, in item 734.88, TSUS. *If imported in lengths of 660 feet, on reels, classifiable under the provision for Cordage: * * * Of man-made fibers in item 316.60 TSUS.* Bureau letter dated May 5, 1965. (Emphasis added.)

This ruling cannot be said to be unreasonable or unwarranted by the pertinent statutory language. See National Labor Relations Board v. Denver Building and Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); United States v. American Trucking Assoc., Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Since the administrative ruling finds support in both lexicographic definitions and judicial decisions, clearly it has a "reasonable basis in law." National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

Alternatively, appellant seeks to have the merchandise classified as parts of lawn-tennis equipment independently of whether it is packaged for retail sale. In essence, appellant contends that the tennis strings are parts of tennis equipment, and that this classification is more specific than the classification as cordage.

We think that argument is without merit. In the words of the court below:

> * * * the racket strings of man-made fibers classifiable under sched-

ule 7, part 5D, are limited to those put up and packaged for retail sale.

> * * * all parts of a statute must be read together and all relevant headnotes are to be considered in determining Congressional intent. R. H. Macy & Co., Inc. v. United States [428 F.2d 856] 57 CCPA 115, C.A.D. 988 (1970). We conclude that it was the intent of Congress that tennis racket strings of man-made fiber put up and packaged for retail sale be classified under item 734.88 (schedule 7, part 5D), as other lawn-tennis equipment and parts, and that tennis racket strings of man-made fiber, not so packaged, be classified under item 316.60 as cordage of man-made fiber. * * *

We are in agreement with that reasoning of the Customs Court. Its decision and judgment are affirmed.

Affirmed.

BALDWIN, J., concurs in the result.