(C. D. 4699)

Ed Alexander *v.* United States

Court No. 76-3-00648

(Decided May 31, 1977)

*Glad, Tuttle & White* (*Edward N. Glad* of counsel) for the plaintiff.

*Barbara Allen Babcock*, Assistant Attorney General (*David M. Cohen*, Chief, Customs Section, and *Sidney N. Weiss*, trial attorney), for the defendant.

LANDIS, Judge: This action involves the classification of merchandise invoiced as "nylon tennis string." Plaintiff imported the nylon string from Japan in November 1974.

Pursuant to the Tariff Schedules of the United States (TSUS) a customs import specialist at the Los Angeles district port of entry classified the nylon string as man-made fiber, not specially provided for, dutiable under item 389.60 of TSUS, schedule 3, part 7, subpart B.

Plaintiff claims that the nylon string is properly classifiable as parts of lawn-tennis equipment, specially provided for in TSUS schedule 7, part 5, subpart D, and dutiable under item 734.88.

Nylon string classified under TSUS item 389.60 is dutiable at 25 cents per pound plus 15 per centum ad valorem. Plaintiff paid that duty rate to obtain release and delivery of the nylon string from customs custody. Nylon string assessed under TSUS item 734.88 is dutiable at only 4 per centum ad valorem. Should plaintiff prevail in this action he is entitled to a refund of the difference in the duty rates.

The pertinent context of the disputed TSUS classifications, items 389.60 and 734.88, is as follows:

As classified:

> Articles not specially provided for, of textile materials:
>> Lace or net articles, whether or not ornamented, and other articles ornamented:
>>> \* \* \* \* \* \* \*
>> Other articles, not ornamented:
>>> \* \* \* \* \* \* \*
>>> Of man-made fibers:

| | | |
|---|---|---|
| \* \* \* | Knit \* \* \*_____ | \* \* \* |
| \* \* \* | Pile \* \* \*_____ | \* \* \* |
| 389. 60 | Other_____ | 25¢ per lb. +15% ad val. |

As claimed:

> Lawn-tennis equipment, and parts thereof:

| | | |
|---|---|---|
| \* \* \* | Balls_____ | \* \* \* |
| | Rackets, whether or not strung: | |
| \* \* \* | Not strung_____ | \* \* \* |
| \* \* \* | Strung_____ | \* \* \* |
| 734. 88 | Other_____ | 4% ad val. |

TSUS, schedule 3, part 1, in a subpart E headnote, leavens the above classifications *inter alia*, providing as follows:

Subpart E headnotes:

    1. The provisions of this subpart do not cover—

     \*       \*       \*       \*       \*       \*       \*

        (ix) racket strings put up and packaged for retail sale (see part 5D of schedule 7) \* \* \*

     \*       \*       \*       \*       \*       \*       \*

    2. (a) For the purposes of the tariff schedules, the term *"man-made fibers"* refers to the filaments, strips, and fibers covered in this subpart. [Emphasis quoted.]

     \*       \*       \*       \*       \*       \*       \*

It has been stated by this court in effect that, for tariff purposes, racket strings that are parts of lawn-tennis equipment include only such as are "put up and packaged for retail sale." *Lyons Export & Import, Inc.* v. *United States*, 65 Cust. Ct. 394, 398, C.D. 4111 (1970), affirmed on appeal in an opinion decision written by Judge Re (now Chief Judge) of this court sitting by designation as a member of the Court of Customs and Patent Appeals, 59 CCPA 142, C.A.D. 1056, 461 F. 2d 830 (1972). In the condition imported, the nylon string in this case was cut to specific lengths and packaged. Plaintiff contends that in the condition that it was cut to specific lengths and packaged, the imported nylon string was put up and packaged for retail sale in lengths sufficient to string one tennis racket. Defendant, citing *Lyons Export & Import, Inc.* v. *United States, supra, inter alia*, argues that the evidence is insufficient to support the fact that the imported nylon string was put up and packaged for retail sale in lengths sufficient to string one tennis racket.

The record consists of testimony from Edward Alexander, the plaintiff, and testimony of William R. Johns, a witness for defendant. There are eight exhibits, three for plaintiff (exhibits 1, 2 and 3) and five for defendant (exhibits A, B, C, D and E). The official customs entry papers are also in evidence.

It is established beyond dispute that, in the condition it was imported, the nylon string consists of two precut lengths of string contained in a plain see-through plastic or cellophane bag bearing only one mark that reads "Made in Japan." The closure of the bag is stapled. Entry No. 836707, identified with this action, covers 10,000 such bags, packed in four cases (2,500 to a case), each bag containing two strings precut to a length that measures 14 feet 3 inches.[1] The remaining entry in this action, No. 836708,[2] covers 20,000

---

[1] Defendant contends that two strings, each measuring 14 feet 3 inches, are not enough to string a tennis racket.

[2] This action originally included three customs entries numbered 836707, 836708, and 833847. On trial, plaintiff abandoned the action as to entry No. 833847.

such bags, packed in eight cases (2,500 to a case), each bag containing two precut lengths of string, one measuring 16 feet 3 inches, and one measuring 14 feet 2 inches.[3] On trial, plaintiff identified samples of the nylon string, packaged as described above, and imported under entry Nos. 836707 and 836708 (exhibits 1, 2 and 3). The samples were received in evidence without objection.[4]

Plaintiff testified that the 10,000 packages covered by entry No. 836707 (exhibits 1 and 2) were sold, in the condition imported, to two manufacturers, identified as Leach, Inc. and P.D.P. (Professional Design Products); that he sold the 20,000 packages covered by entry No. 836708 to Wilson Sporting Goods; that the different lengths are precut to his purchasers' specifications for tennis rackets of different head size; that two strings in the lengths packaged and imported are enough to string one tennis racket, and that some tennis rackets require longer lengths. He was, said plaintiff, familiar with racquetball rackets and squash ball rackets; that tennis string had a higher tensile strength than string for racquetball rackets or squash rackets, and because the lower the tensile, the less expensive the string, it would make no sense to use high tensile string in racquetball rackets or squash rackets. In substance, he testified that the imported packaged string is tensiled for tennis rackets and not for racquetball or squash rackets.

On cross-examination, plaintiff stated that Leach made plastic tennis rackets and racquetball rackets, but he acknowledged that the racket string sold to Leach in this case was after Leach had discontinued making tennis rackets. He surmised that Leach probably had a large inventory of tennis racket frames to be strung with the nylon string plaintiff sold them. P.D.P., plaintiff said, makes tennis rackets and does not make racquetball rackets. Wilson Sporting Goods makes tennis rackets. For all that, when asked what the manufacturers

---

[3] Defendant contends that there is no evidence that, in the condition imported, the strings are put up and packaged for retail sale.

[4] Defendant in Point 1 of its brief argues that plaintiff has not proved the identity, i.e., number of nylon strings contained in the packages covered by active entries 836707 and 836708. In support, defendant relies on plaintiff's pretrial interrogatories (exhibit A) where plaintiff stated that some packages of precut nylon string "come imported" in packages containing enough string to string one racket, and that two packages each containing 100 pieces of string cut in varying lengths will string 100 rackets; also that approximately 25% of the importations involve packages containing enough string to string one racket, and approximately 75% involve packages containing enough string for 100 rackets. Based on those percentages, defendant postures that the packages imported under entry Nos. 836707 and 836708 must include packages containing 100 strings and that plaintiff has failed to identify them with either entry.

Defendant cross-examined plaintiff on the point and plaintiff explained that this was his first time in court and that his statements in response to the interrogatories reflected his general import business in all packaged nylon string and not the packages covered by the active entries in this case which contain two strings. enough to string one racket. Trial testimony can properly explain statements made in response to pretrial interrogatories. Since defendant did not object to the samples admitted in evidence (exhibits 1, 2 and 3) as representative of the nylon string imported in connection with entries 836707 and 836708, the identity of the imported nylon string in packages containing two precut lengths of string is established by the samples. Defendant offered no evidence to the contrary.

do with the nylon string, plaintiff testified: "I don't know what they do with the string. I do not know what they do with the string after they get it. That is not my business." [5]

Defendant's witness, Mr. William R. Johns, testified that he operates a retail sports store in Los Angeles. He stated that his store specializes to the extent that 90% of the business is in racket sports and, of that, 60% has to do with stringing rackets. It is Mr. John's testimony that most tennis string is sold at retail in conjunction with stringing a customer's racket, using two hydraulic stringing machines; that plaintiff's exhibit 3 (two strings, one 16'3" and one 14'2") is enough to string one tennis racket; that he doubts that plaintiff's exhibits 1 and 2 (two strings in each, both measuring 14'3") are enough to string a common tennis racket, but the strings are appropriate to string racquetball and squash rackets; that very rarely does a customer come into his store and ask for tennis string; that if a customer should ask for tennis string, he sells it in packaged form, if available, otherwise he cuts a length of 33 to 35 feet off a large roll for the customer and that he has never seen or sold string, packaged or otherwise, in two lengths of 14'3" each, or for that matter in two lengths, one 16'3", the other 14'2". Mr. Johns further testified that he has seen retail packages containing tennis string, most commonly in 33-foot lengths and 22 feet in combination with 11 feet, and identified brand name packaged tennis string in 35-foot length (exhibits C and D) and 34-foot length (exhibit E).

On cross-examination, Mr. Johns testified that the amount of string needed to string a tennis racket differs depending on the model that is being strung. It is possible that there are models that require two strings of the same length for the main vertical strings and the cross strings of a racket. Professional Design Products (P.D.P.) manufactures three models of tennis rackets and Mr. Johns stated that, as yet, he has had no occasion to string the smallest model which is prestrung in the factory. It is possible, he said, that P.D.P. makes a tennis racket that takes two strings of the same length, but he did not know for certain. He was familiar with the P.D.P. junior rackets but had no experience stringing them and could not say how much string they would need to string them.

---

[5] At the close of Mr. Alexander's testimony plaintiff rested his case and defendant, on motion in open court, immediately proceeded to offer in evidence, as part of the official record, "all three entries and all the court papers." The papers were admitted in evidence without objection. Following the receipt of said evidence, on motion pursuant to rules 8.3(c) and 8.3(d) of the rules of this court, defendant asked the court to dismiss plaintiff's action for failure to prove a *prima facie* case. Plaintiff opposed the motion. Ruling on the motion was reserved, and counsel directed to brief the motion together with the merits of this action. Defendant having proceeded to offer evidence prior to making the motion is deemed to have waived the motion, and it is denied. See, *A. & N. Club, etc.* v. *Great American Insurance Company*, 404 F. 2d 100, 103 (6th Cir. 1968); *Wealden Corporation, et al.* v. *Schwey, et al.*, 482 F. 2d 550, 551 (5th Cir. 1973); 5 *Moore's Federal Practice*, section 41.13 [1] at 1149, discussing principle that motion to dismiss at the close of plaintiff's evidence is waived if defendant proceeds with its case before the court rules on the motion.

When questioned by plaintiff about his sales for tennis string to take out, Mr. Johns' testimony was as follows:

> Q. Mr. Johns, how often does it happen that you have a customer that just buys the tennis string?—A. Very rarely.
> Q. How rare is rare?—A. A dozen times a year at the most.
> Q. And how many tennis racquets do you sell during a year's time?—A. Well, in the area of thousands.
> Q. And how many tennis racquets would you say you restring during a year's time?—A. Well, if we average 25 a day, 25 times six is 150, so 150 times 52.

On the merits, defendant points out that the evidence establishes that plaintiff sold the racket strings in this case in the bulk lot imported only to manufacturers. Relying on the *Lyons* case, *supra*, defendant postures that the TSUS language "put up and packaged for retail sale" requires evidence that the package is sold at retail to the ultimate consumer. Plaintiff contends that the *Lyons* case does not even support, much less hold, that the classification of tennis string requires that the string be sold at retail to the ultimate consumer. *Lyons*, according to plaintiff, supports the customs administrative view[6] that tennis string, imported in lengths required for stringing one tennis racket, is properly classifiable under the provision for lawn-tennis equipment and parts thereof in TSUS item 734.88. Plaintiff thus concludes that, in terms of the TSUS limitation on the classification of racket string, the headnote merely requires that, in the condition imported, the racket string is put up and packaged for retail sale.

The *Lyons* case, relied on by defendant, involved tennis string in coils 660 feet in length, wound on plastic reels, and shown to be sold to sporting goods dealers and the tennis professional. Factually it was not, in that form and condition, "put up and packaged for retail sale" because as this court stated it "would be unreasonable to assume, without evidence, that a reel 660 feet—enough to string about 20 tennis rackets—is a retail package." *Lyons, supra* (65 Cust. Ct., p. 399). On appeal, the appeals court examined the various lexicographic definitions of the terms "retail" and "retail sale." In determining the meaning of those terms, the appeals court, found that sales at retail are commonly viewed as sales in small quantities to ultimate consumers, and stated as follows:

> Bearing the foregoing in mind, it cannot be said that the court below erred in concluding that only tennis string put up and packaged for sale in small quantities for ultimate consumers was to be classified as lawn-tennis equipment, and parts thereof.

> An examination of the record reveals that, at the trial, appellant succeeded in showing only that Elascord is sold to "sporting

---

[6] See T.D. 56502(38), 100 Treas. Dec. 632, and T.D. 66-157(18), 101 Treas. Dec. 436.

goods dealers and the tennis professional." It did not prove that these were sales to the ultimate consumer. Consequently the Customs Court could not have found that the merchandise consisted of "racket strings put up and packaged for retail sale." Therefore, since it cannot be said that the Customs Court erred on the evidence before it, we affirm. [59 CCPA 142, 145, C.A.D. 1056, 461 F. 2d 830, 832 (1972).]

Upon weighing and considering the testimony adduced on this record, I conclude that plaintiff has failed to establish that the racket string is put up and packaged for retail sale. Plaintiff's testimony merely establishes that the racket string was sold by him to manufacturers. Beyond that plaintiff did not know what they did with it. Plaintiff's testimony is plainly not evidence that the racket string was put up and packaged for retail sale. Defendant's witness testified that, in his tennis retail business, he used almost all his tennis string for restringing tennis rackets using hydraulic machines; "very rarely" did he sell tennis string to take out, a "dozen times a year at the most." Such testimony obviously does not cure plaintiff's own failure to show that the racket string imported in this case was put up and packaged for retail sale. If the evidence can be said to prove anything, it is that the imported racket string was not put up and packaged for retail sale because it was sold to manufacturers of rackets for a purpose not disclosed in this record. There is not a scintilla of evidence that the imported string was put up for retail sale. If in fact it was put up for retail sale, I cannot perceive why evidence was not introduced to that effect. On this record, the question is left open and the court "may not properly supply from imagination the essentials in which the proofs are deficient." *United States* v. *Malhame & Co.*, 19 CCPA 164, 171, T.D. 45276 (1931). Plaintiff has not overcome the presumption that the nylon string was properly classified under TSUS item 389.60, *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970).

The action is, accordingly, dismissed. Judgment will so enter.