# United States Court of Appeals for the Federal Circuit

06-1093

PROCESSED PLASTIC COMPANY

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Elizabeth L. Barbour, Stack & Filpi, Chartered, of Chicago, Illinois, argued for plaintiff-appellant. On the brief were Paul F. Stack and Robert A. Filpi.

James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney in Charge, of New York, New York. Of counsel on the brief was Michael W. Heydrich, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Delissa A. Ridgeway

# United States Court of Appeals for the Federal Circuit

06-1093

PROCESSED PLASTICS COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Cross-Appellee.

_____

DECIDED:  December 21, 2006
_____

Before LOURIE, SCHALL, and DYK, Circuit Judges.

LOURIE, Circuit Judge.

Processed Plastics Company ("Processed") appeals from the decision of the United States Court of International Trade ("the trial court") granting summary judgment in favor of the United States and holding that United States Customs and Border Patrol ("Customs") properly classified two children's backpacks and one children's beach bag under subheading 4202.92.45 of the Harmonized Tariff Schedule of the United States ("HTSUS").  Because the trial court correctly granted summary judgment, we affirm.

## BACKGROUND

The subject merchandise is a "Pooh backpack," a "Barbie backpack," and a "Barbie beach bag."  The front, back, and side panels of the backpacks consist of

polyvinyl chloride plastic sheeting while the bottom consists of a plastic mesh. The backpacks are about eleven inches high, nine inches wide, and three and a half inches deep, and include imprints of the respective "Pooh" and "Barbie" characters. The beach bag is a vertical cylinder with polyvinyl chloride plastic sheeting forming the vertical surface. The bottom consists of a plastic mesh, and a woven cord serves as a drawstring closure for the top of the bag and as the carry strap. The beach bag is twelve inches high and nine inches in diameter. Processed placed an assortment of sand toys manufactured in the United States in the backpacks and beach bag and then placed them in additional external packaging for retail sale.

Processed entered the subject merchandise into the United States between February and May 1999. Customs classified the backpacks and beach bag under subheading 4202.92.45, ". . . traveling bags, . . . knapsacks and backpacks, . . . and similar containers, . . . of sheeting of plastics . . . : Other: With outer surface of sheeting of plastic or of textile materials: Travel, sports and similar bags: Other," with a 20% ad valorem duty. Processed filed a protest of the decision of Customs on October 29, 1999, and Customs denied the protest on March 28, 2000.

On December 13, 2001, Processed filed an action in the Court of International Trade protesting the final decision of Customs, asserting that the backpacks and bag are properly classifiable under subheading 9503.70.00, "Other toys; reduced-size ('scale') models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof: Other toys, put up in sets or outfits, and parts and accessories thereof," and thus duty free. The government filed a motion for summary

06-1093                                          -2-

judgment claiming that the subject merchandise is properly classified under subheading 4202.92.45 of the HTSUS.

The Court of International Trade determined that the conclusory statements offered by Processed in support of its opposition to the motion for summary judgment were insufficient to create genuine issues of material fact precluding summary judgment. In particular, the trial court determined that because of Processed's failure to prove the "play value" of the merchandise at issue, the "sine qua non" of a "toy," Processed's arguments as to more peripheral issues of fact were immaterial.

Having found no genuine issues of material fact, the Court of International Trade determined that summary judgment in favor of the government was appropriate. With respect to the backpacks, the court noted that heading 4202 specifically recites backpacks and that Additional U.S. Note 1 to Chapter 42 defines "travel, sports and similar bags," a phrase used in the subheadings of 4202, to include backpacks. The court then determined that the imported backpacks met the dictionary definition of "backpack." The court also noted that Processed's entry papers identified the items as "backpacks" and that Processed's advertising materials describe the items as "backpacks." The court then determined that the backpacks met the test of Totes, Inc. v. United States, 69 F.3d 495, 498 (Fed. Cir. 1995), for the essential characteristics of items within heading 4202 ("organizing, storing, protecting, and carrying various items"). The court determined that the beach bag is a "similar container" and "similar bag" as recited in heading 4202 and under subheading 4202.92, respectively, and that similar reasoning thus applied to the beach bag. The trial court concluded that the backpacks and beach bag were properly classified under subheading 4202.92.45.

Processed timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review the Court of International Trade's grant of summary judgment on tariff classifications de novo. Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006). A classification decision involves two underlying steps: (1) determining the proper meaning of the tariff provisions, which is a question of law; and (2) then determining which heading the particular merchandise falls within, which is a question of fact. Id.

In its opening brief on appeal, Processed argues that the trial court erred by granting summary judgment in favor of the government despite the existence of genuine issues of material fact as to the nature and use, avenue of sale, and weight-capacity of the merchandise. Processed argues that because the word "toy" is not defined by the HTSUS, the trial court has determined that "toys" are "articles whose principal use is amusement, diversion, or play, rather than practicality." See Minnetonka Brands, Inc. v. United States, 110 F. Supp. 2d 1020, 1027 (Ct. Int'l Trade 2000). Processed argues that each of the disputed issues above is material to the determination of such principal use under the multi-factor test for a "toy" laid out in Minnetonka. See id. Second, Processed argues that the trial court erred in determining that the merchandise is properly classified under subheading 4202.92.45 rather than heading 9503. Processed further argues that any utilitarian aspects of the merchandise are incidental to its amusement qualities and that the merchandise satisfies the multi-factor test of Minnetonka. Finally, Processed argues that when a product is prima facie classifiable

under two headings, General Rule of Interpretation ("GRI") 3(a) of the HTSUS provides that the more specific heading is preferred and that a "use provision" is generally more specific than an eo nomine provision.

The government responds that the trial court applied the correct standard for defining "toys" and properly granted summary judgment. The government argues that Processed did not come forward with sufficient evidence to create triable issues on matters for which it bore the burden of proof. The government also adopts the position of the trial court that "play value" is the dominant factor in determining whether a product should be classified as a toy. In addition, the government argues that the amusement value of the merchandise cannot be incidental to the utilitarian aspects because Processed failed to provide sufficient evidence to support a finding that play value even exists in this merchandise. Furthermore, the government argues that Processed's advertising focuses on the utility of the backpacks and beach bag to transport the sand toys sold with the backpacks and bag and to transport other small personal children's items. The government further argues that GRI 3(a) does not apply to this case because Processed did not demonstrate that the products are prima facie classifiable under heading 9503. Lastly, the government asserts that the heading "traveling bags . . . backpacks . . . and similar containers" for 4202 is far more specific than the heading "Other toys" for 9503.

We agree with the government that the Court of International Trade correctly granted summary judgment affirming Customs's classification of the merchandise. We first set out the relevant portions of the HTSUS, as follows:

| 4202 | Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, camera |
|---|---|

cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or paperboard, or wholly or mainly covered with such materials or with paper:

           \*     \*     \*

Other:

           \*     \*     \*

4202.92                        With outer surface of sheeting of plastic or of textile materials:

                                Travel, sports and similar bags:

                                      With outer surface of textile materials:

                                          \*     \*     \*

4202.92.45                    Other

  \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

9503              Other toys; reduced-size ("scale") models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof:

           \*     \*     \*

9503.70.00                    Other toys, put up in sets or outfits, and parts and accessories thereof

The classification of imported items is determined by their condition at the time of entry. Austin Chem. Co. v. United States, 835 F.2d 1423, 1426 (Fed. Cir. 1987).

We agree with the standard adopted in Minnetonka to determine whether merchandise should be classified as a toy. In considering the proper classification under the HTSUS of hollow plastic containers in the shape of cartoon characters used to sell bubble bath, the Minnetonka court determined that the principal use of a "toy" is amusement, diversion, or play (or as the trial court termed it, "play value") rather than practicality. 110 F. Supp. 2d at 1021, 1026. However, we do not agree with Processed's characterization of the seven factors recited in Minnetonka (to help

determine if subject merchandise is of the same class or kind as more specifically recited merchandise) as definitive or even as carrying weight equal to principal use in defining "toys." Instead, it is clear that those factors are simply areas of inquiry that may prove useful in determining what is the principal use of merchandise alleged to be a "toy." In this case, in particular, the imported backpacks and beach bags are sold in sets with sand toys, so the significance of certain factors, such as the channel of sale, is greatly reduced in determining the proper classification of the backpacks and beach bags as imported—alone and empty.

The trial court found that Processed failed to allege facts sufficient to support a conclusion that the primary use of the backpacks and beach bag is as a toy (i.e., for play). We discern no error in that finding. As noted by the trial court, "It is well settled that a conclusory statement on the ultimate issue does not create a genuine issue of fact." Applied Cos. v. United States, 144 F.3d 1470, 1475 (Fed. Cir. 1998) (internal quotations and citation omitted). Also, as noted by the trial court, the nonmovant "must point to an evidentiary conflict created on the record at least by a counter statement of fact or facts set forth in detail." Barmag Barmer Maschinenfabrik AG. v. Murata Machinery, Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984).

In its brief, Processed supports its primary use argument with several statements from the record, but each one was fully considered by the trial court in its decision. The statement of professional toy buyer Jay Byrd referenced for support by Processed in its brief is wholly conclusory. Furthermore, the statement does not support a conclusion that there is separate play use for the backpacks and beach bag, as it merely states that the use of the "vinyl beach bag and beach toys" is for play. Processed's reference to an

advertisement for the merchandise stating that "[i]t's a beachy day, and a great way to begin your adventure" is even less pertinent. Finally, the statement of Processed's Vice President of Engineering, David Bergman, suffers from a similar defect. Although it is slightly less conclusory, it is also insufficient to raise a genuine issue of material fact. The affidavit states, "The merchandise was primarily designed to provide amusement and diversion for children by giving them a clear plastic beach toy which they could use as a sand and water sieve and in which they can insert and remove small, lightweight objects." However, this statement is not supported by any study as to the actual use of the bags or any showing that the bags themselves were marketed primarily as play items. Bergman's conclusory statement as to the company's supposed intent as to how the bags should be used provides no evidence of their play value. Even if credited, both identified play uses appear incidental to the merchandise's utilitarian functions of transporting the included sand toys and helping to drain them of sand and water (rather than the functional use being incidental to the play value). We therefore agree with the trial court that Processed has failed to meet even the minimum threshold necessary to overcome summary judgment that the imported backpacks and beach bag are not classifiable as toys under heading 9503.

Similarly, we agree with the government and the trial court that there are no genuine issues of material fact preventing a determination that the backpacks and beach bag are properly classified under subheading 4202.92.45. Other than arguing that the merchandise is more properly classified as a toy, Processed argues that the merchandise cannot be classified as a "backpack" under heading 4202 because it can only carry a weight of three pounds without being deformed. As noted by the trial court

and the government, there is no weight or structural integrity requirement specified for heading 4202. Viewing the facts in the light most favorable to Processed, the merchandise is at least suitable for a child to transport the sand toys sold therewith and other objects weighing up to three pounds.

Processed also challenges the trial court's determination that the merchandise satisfies what it refers to as the Totes characteristics for classification in heading 4202. However, we did not recite a controlling test in Totes. Instead, we merely agreed with the Court of International Trade's determination that a car trunk organizer not specifically recited under 4202 shared the characteristics of organizing, storing, protecting, and carrying various items with those products that are specifically recited under heading 4202. Totes, 69 F.3d at 498. In any case, Processed does not dispute that the backpacks and beach bag store and carry various items. We do not find persuasive Processed's argument that the products cannot be used for organizational purposes because they consist of a single compartment, or that the products cannot help protect their contents because they include mesh bottoms. They may not provide the same amount of organization and protection as other possible designs, but they clearly provide some level of organization and protection. Thus, there is no reason that the backpacks and the beach bag of a highly similar function should not be classified under the eo nomine heading 4202 that describes them.

Given their construction, the backpacks and beach bag clearly fall within subheading 4202.92 for 4202 items "[w]ith outer surface of sheeting of plastic or of textile materials." The next subheading under 4202.92 recites, "Travel, sports and similar bags." Additional U.S. Note 1 to Chapter 42 states, "For the purposes of

heading 4202, the expression 'travel, sports and similar bags' means goods . . . of a kind designed for carrying clothing and other personal effects during travel, including backpacks and shopping bags of this heading . . . ." Thus, the merchandise qualifies as "Travel, sports and similar bags" under Note 1. Subheadings 4202.92.15 through 4202.92.30 are for such "Travel, sports and similar bags" "[w]ith outer surface of textile materials," and thus "Travel, sports and similar bags" with "outer surface of sheeting of plastic" fall into subheading 4202.92.45 for "Other." The trial court did not err in determining that, given the undisputed material facts, the imported backpacks and beach bag should be classified under subheading 4202.92.45.

Additionally, we reject Processed's argument that the rule of relative specificity in GRI 3(a) supports classification of the merchandise under heading 9503. First, as explained above, Processed failed to make a prima facie showing that the backpacks and beach bag could be classified under heading 9503. Therefore, a necessary predicate to the application of GRI 3(a), merchandise that is prima facie classifiable under two headings, is not present here. In addition, assuming that the merchandise was prima facie classifiable under 9503, we agree with the government that heading 4202 for backpacks and similar containers is more specific than 9503 for "other" toys.

Finally, Processed raises a new argument in its reply brief, one not raised before the trial court or in its opening brief to this court. Noting that subheading 9503.70.00 recites "Other toys, put up in sets or outfits, and parts and accessories thereof," Processed argues that the backpacks and beach bag are "accessories" to the sand toy "sets" with which they are sold. While we usually do not consider arguments first raised in a reply brief, we do so here because it relates to additional wording within the same

subheading under which Processed previously argued classification of its merchandise and in the interest of ascertaining that the goods have been correctly classified.  See Rollerblade, Inc. v. United States, 282 F.3d 1349, 1353 (Fed. Cir. 2002).

We conclude that the subject merchandise is not "accessories thereof."  In Rollerblade, we found that under its dictionary or common meaning, an "accessory" "must bear a direct relationship to the primary article that it accessorizes."  282 F.2d at 1352.  More specifically, we determined that the protective gear at issue, such as knee pads and elbow guards, did not "directly act" upon the in-line skates that they allegedly accessorized.  Similarly, the backpacks and beach bag at issue here may be suitable for transport of the sand toys, but the bags do not directly affect or enhance use of the sand toys in the way required in order to be classified as "accessories."  Thus, there is no "direct" relationship between the items, and the backpacks and beach bag are thus not accessories to the sand toys.

Processed's attempt to support its argument by reference to Additional U.S. GRI 1 and Note 3 to Chapter 95 is not persuasive.  Additional U.S. GRI 1(c) states, "In the absence of special language or context which otherwise requires – (c) . . . a provision for 'parts' or 'parts and accessories' shall not prevail over a specific provision for such part or accessory."  Thus, Additional U.S. GRI 1(c) states that absent "special language," the backpacks and beach bag should be classified under heading 4202, which specifically names backpacks and similar bags, rather than as an accessory under heading 9503.  Processed attempts to argue that Note 3 to Chapter 95 constitutes such "special language."  Note 3 states, "Subject to note 1 above, parts and accessories which are suitable for use solely or principally with articles of this chapter

are to be classified with those articles." (emphasis added). Note 3 is of no help to Processed. The backpacks and beach bag are general use articles that can be used to carry any number of different items weighing up to at least three pounds, and thus they are not "suitable for use solely or principally" with sand toys.

Processed's alternative argument that the imported products should be classified as accessories to the sand toys with which they are sold therefore does not alter our conclusion that they are properly classified under subheading 4202.92.45 and that summary judgment was thus appropriate.

## CONCLUSION

We affirm the Court of International Trade's decision granting summary judgment in favor of the government and confirming Custom's classification of the imported "Pooh" and "Barbie" backpacks and "Barbie" beach bag under heading 4202.92.45 of the HTSUS.

## AFFIRMED