DYK, Circuit Judge,
concurring.
I join the majority opinion except for Part B, and I also agree that the majority reaches the correct result. However, I respectfully disagree with the reasoning of Part B. In my view, Heading 9403 as *1365 applied to “unit furniture” is a use provision, rather than an eo nomine provision as the majority concludes.
I
To be a use provision, a heading has to “[describe] articles by the manner in which they are used as opposed to by name.” Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1308 (Fed.Cir.2003). In contrast, an eo nomine provision is one “in which an item is identified by name.” Id.
In many respects, Heading 9403 is unquestionably a use provision because many subheadings in this section depend on use. See, e.g., Subheading 9403.10.00, HTSUS (“Metal furniture of a kind used in offices”) (emphasis added); Subheading 9403.40, HTSUS (“Wooden furniture of a kind used in the kitchen”) (emphasis added); Subheading 9403.90.10, HTSUS (“Parts [o]f furniture of a kind used for motor vehicles” (emphasis added)). Similarly, the chapter notes and explanatory notes for Section 9403 all describe “unit furniture” by “the manner in which [it] is used as opposed to by name.” Len-Ron, 334 F.3d at 1308. As we concluded in Park B. Smith, Ltd. v. United States, 347 F.3d 922, 926 (Fed.Cir.2003), “[s]ection and [e]hapter [n]otes are not optional interpretive rules, but are statutory law” with binding legal effect. See also General Rule of Interpretation 1, HTSUS (stating that classification “shall be determined according to the terms of the headings and any relative section or chapter notes”). Chapter Note 2 to Chapter 94, which controls this case, provides:
The articles (other than parts) referred to in headings 9401 to 9403 are to be classified in those headings only if they are designed for placing on the floor or ground. The following are, however, to be classified in the above-mentioned headings even if they are designed to be hung, to be fixed to the wall or to stand one on the other: (a) Cupboards, bookcases, other shelved furniture and unit furniture....
Chapter 94 Notes, Note 2, HTSUS (emphases added). The Explanatory Notes similarly state that “unit furniture” must be “designed to be hung, to be fixed to the wall or to stand one on the other or side by side, for holding various objects or articles....”[1] Explanatory Notes to Chapter 94 (2002) (emphases added).
Although the Chapter Notes do not contain the words “used for,” our court has held that a provision may be a use provision even without such language. In Processed Plastics Co. v. United States, 473 F.3d 1164, 1169-70 (Fed.Cir.2006), we defined a HTSUS subheading as a use provision even though the phrase “used for” was absent from Subheading 9503.70.00, HTSUS. That provision covered, “Other toys; reduced-size (‘scale’) models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof: Other toys, put up in sets or outfits, and parts and accessories thereof.” Id. at 1168. Processed Plastics upheld the standard adopted in Minnetonka Brands, Inc. v. United States, 110 F.Supp.2d 1020, 1026 (Ct. Int’l Trade 2000), which stated that
[although nothing in heading 9503 ... explicitly states that an item’s classification as a ‘toy’ is dependent upon its use, the court finds inherent in the above definitions the notion that an object is a *1366 toy only if it is designed and used for amusement, diversion or play, rather than practicality.
See also Orlando Food Corp. v. United States, 140 F.3d 1437, 1441 (Fed.Cir.1998) (finding “[ijnherent in the term ‘preparation ’ ... the notion that the object involved is destined for a specific use”). Thus, we construed heading 9503 as a “principal use” provision, insofar as it pertained to “toys.”
Similarly, Subheading 9403.90.50, HTSUS, is a use provision because the classification of the storeWALL panels turns on the manner of use — whether the items are primarily used with shelves or with hooks. Just as the toys in Processed Plastics were “designed and used for amusement, diversion or play,” the unit furniture here- — as the majority describes — is inherently designed to be “assembled together in various ways to suit the consumer’s individual needs to hold various objects or articles.” Maj. Op. at 1364.
Indeed, the majority touts the “versatility and adaptability” of unit furniture, and then cites the Brussels Nomenclature Committee Report, which defines unit furniture as furniture “arranged to suit the tastes and needs of [its] users and the shape and size of the rooms to be furnished.” Maj. Op. at 1364 (quoting Nomenclature Committee, 26th Session, Report (Apr. 14, 1971)); (J.A. 279). As the majority states, “[t]he fact the end user has the option with the storeWALL system to add or subtract accessories is the very reason any such system is unit furniture under the Court of International Trade’s definition.” Maj. Op at 1364. Thus, the majority itself describes “articles by the manner in which they are used as opposed to by name.” Len-Ron Mfg. Co., 334 F.3d at 1308. This is the very definition of a use provision.
II
Under a use analysis, Subheading 9403.90.50 is governed by Additional U.S. Rule of Interpretation 1(a), which states that “a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.” Here, the evidence shows that the principal use of the storeWALL system was not as a rack. In 2008, a survey of ten independent dealers selling store-WALL panels, accounting for over 50% of storeWALL’s wall panel sales, showed that over 95% of the accessory sales by these dealers were for cabinets and shelves, and only 4.8% of sales were for hooks. J.A. 315.
Nonetheless, the government relies on Millenium Lumber Distribution Ltd. v. United States, 558 F.3d 1326, 1329-31 (Fed.Cir.2009), to contend that we cannot look to principal use because the store-WALL system was “not dedicated solely or principally to unit furniture as [it could] be configured, finished, and completed to form articles which are not classifiable under Heading 9403.” Appellee’s Br. 21. Under Millenium Lumber, “if the item as imported can be made into multiple parts of articles, the item must identify and fix with certainty the individual parts that are to be made from it.” Id. at 1329 (internal quotation omitted). The cut lumber at issue in Millenium Lumber was unfinished, raw material that could be used for trusses and other general purposes, rather than “identifiable parts” of a specific finished truss. Id. at 1329-30. In contrast, the storeWALL panels are finished items that are consistent with the Court of International Trade’s definition of unit furniture — items that may be “assembled *1367 together in various ways to suit the consumer’s individual needs to hold various objects or articles.” storeWALL, LLC v. United States, 675 F.Supp.2d 1200, 1204 (Ct. Int’l Trade 2009). The principal use provision thus governs, and the wall panels are properly classifiable as “parts” of unit furniture under Subheading 9403.90.50.

. The Explanatory Notes to Chapter 94, though not legally binding, define the following as “furniture”: “Cupboards, bookcases, other shelved furniture and unit furniture, designed to be hung, to be fixed to the wall or to stand one on the other or side by side, for holding various objects or articles ... and separately presented elements of unit furniture.” Explanatory Notes to Chapter 94 (2002).