SGI, INCORPORATED, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 96–1272.

United States Court of Appeals, Federal Circuit.

Sept. 5, 1997.

Ralph H. Sheppard, Meeks & Sheppard, New York City, argued for plaintiff-appellant. With him on brief were Jeffrey A. Meeks and Lisa Levaggi Borter.

Barbara M. Epstein, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Field Office, New York City, argued for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director, Department of Justice, Washington, DC. Also with her on the brief was Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City. Of counsel on the brief was Karen P. Binder, Assistant Chief Counsel, International Trade Field Office, New York City.

Steven P. Florsheim, Grunfeld, Desiderio, Lebowitz & Silverman LLP, New York City, for amicus curiae Arrow Trading.

Before RICH, NEWMAN, and PLAGER, Circuit Judges.

RICH, Circuit Judge.

SGI Incorporated (SGI) appeals from a decision of the United States Court of International Trade rendered on cross motions for summary judgment in which the Court of International Trade classified SGI'S portable soft-sided vinyl coolers under subheading 4202.92.90 of the Harmonized Tariff Schedule of the United States (HTSUS), which carries a 20% *ad valorem* tax. We reverse.

## BACKGROUND

SGI imports "Chill" coolers from Taiwan, China, and Hong Kong. It is undisputed that the "Chill" coolers at issue are portable soft-sided vinyl insulated coolers with handles or straps used for storage of food or beverages, for maintaining a cold temperature over time, and for carrying such coolers from place to place. The coolers' insulative properties are similar to both hard and soft-sided coolers, and the coolers' insulative material consists of a polyethylene closed cell foam approximately one half inch thick between an outer and inner vinyl shell surrounding the storage compartment of the cooler. Plastic is the component material of chief value.

The Court of International Trade also found that the coolers at issue in this case were identical to the coolers at issue in *Sports Graphics, Inc. v. United States*, 24 F.3d 1390 (Fed.Cir.1994), decided under the Tariff Schedules of the United States (TSUS) which preceded the HTSUS. The Court of International Trade found that:

In *Sports Graphics*, Customs had classified plaintiff's coolers as "Other" articles of "luggage" under item 706.62, TSUS, pursuant to the definitional Headnotes 2(a)(i) and (ii) of Schedule 7, Part 1, Subpart D. Plaintiff claimed, and the CIT agreed, that the merchandise was not *ejusdem generis* with the TSUS luggage exemplars because "the chief use of the Chill cooler, as with the general class of 'coolers,' is to maintain food and beverages at a desired temperature over a period of time." Such a use is a storage function. Accordingly, the coolers were properly dutiable under item 772.15, TSUS, as "articles chiefly used for preparing, serving, or storing food or beverages. Other." On appeal, the CAFC affirmed, holding with respect to *ejusdem generis*:

The trial court concluded that when determining the classification of the merchandise at issue here, under a proper analysis, the focus should be on whether food or beverage is involved. We agree. In focussing on whether food or beverage is involved, it is clear that the merchandise has a different purpose, the storage of food or beverage, which precludes the merchandise from being

*ejusdem generis with the exemplars listed in headnotes 2(a)(i) and 2(a)(ii) of the luggage provision.*

*SGI, Inc. v. United States,* 917 F.Supp. 822, 825–26 (Ct. Int'l Trade 1996) (citations omitted) (quoting *Sports Graphics,* 24 F.3d at 1393).

The United States Customs Service (Customs), however, classified the coolers under Heading 4202 of HTSUS that is comparable to the "luggage" provision of the TSUS, which was rejected by the Federal Circuit as an improper classification in *Sports Graphics.* Customs classified the coolers under subheading 4202.92.45, HTSUS, covering travel, sports and similar bags with an outer surface of textile materials, with a schedule duty rate of 20% *ad valorem* tax. The Court of International Trade found Customs' classification inapplicable and classified the coolers under an alternative classification suggested by Customs, subheading 4202.92.90, covering items similar to the exemplar containers in Heading 4202, which also carries an *ad valorem* tax of 20%. *SGI,* 917 F.Supp. at 833.

In classifying the coolers, the Court of International Trade held that the reasoning in *Sports Graphics* did not apply to exclude the coolers from classification under Heading 4202, HTSUS, for several reasons. The Court of International Trade found that Heading 4202 is expressly broader than the TSUS luggage provisions under which *Sports Graphics* was decided. For instance, it included "an expanded and diversified list of exemplar containers, such as shopping bags, holsters, musical instruments cases, map cases, toiletry bags, sports bags, tool bags, jewelry boxes, etc." *SGI,* 917 F.Supp. at 827. The Court of International Trade also found that no provision existed under the HTSUS containing the relevant language of item 772.15 (or 772.16), TSUS, *i.e.* articles chiefly used for preparing, serving, or storing food or beverages, found to be the proper classification for the coolers in *Sports Graphics. Id.*

The Court of International Trade applied the reasoning in *Totes, Inc. v. United States,*

69 F.3d 495, 498 (Fed.Cir.1995), which found that the criterion for being *ejusdem generis* with the *eo nomine* articles set forth under Heading 4202, based on the essential characteristics or purposes that unite the exemplar articles, is whether the merchandise to be classified is designed to "organize, store, protect and carry various items." The Court of International Trade said:

> Indeed, the expanded panoply of enumerated containers described in Heading 4202, designed to protect, store, and carry wide-ranging products, and some serving the purpose of storing certain consumable products, including pouches and cases for cigarettes and tobacco, leaves little doubt that storage of food in coolers is not a "different purpose" than that served by the Heading 4202 exemplars.
>
> Thus, for application of *ejusdem generis* to Heading 4202, it is the exemplar containers' *purpose or use* for storage, transportation, protection, etc. that is relevant, and *not whether the contents stored and/or carried by the exemplar containers* are food or beverages. Although most of the Heading 4202 exemplar containers are not specifically designed and constructed for storage of food or beverages to maintain a cold temperature over time, precise functional equivalence to, or commercial interchangeability with, particular exemplars enumerated in the Heading is plainly not required by the term "similar" or the rule of *ejusdem generis.*

*SGI,* 917 F.Supp. at 828 (citation omitted). The Court of International Trade found, based on this reasoning, that the coolers were properly classified under Heading 4202.

The Court of International Trade, however, refused to affirm Customs' classification of the coolers under 4202.92.45, HTSUS, encompassing "Travel, sports and similar bags," saying:

> Because the coolers are not "designed for carrying clothing and other personal effects during travel," like backpacks and shopping bags, it does not follow *ipso facto* that the coolers do not possess the essen-

tial common characteristics that unite all of the exemplar containers in Heading 4202. As the Court has found that the coolers are *ejusdem generis* with the exemplar containers in Heading 4202, they are classifiable as "similar containers" within the purview of subheading 4202.92.90, HTSUS, a less specific subheading than subheading 4202.92.45.

*SGI,* 917 F.Supp. at 831.

### DISCUSSION

■ Whether an imported item has been properly classified involves a two step analysis:

(1) ascertaining the proper meaning of specific terms in the tariff provision; and

(2) determining whether the merchandise at issue comes within the description of such terms as properly construed.

*Sports Graphics,* 24 F.3d at 1391. Determining the proper meaning of terms is a question of law that we review de novo, while determining whether the item fits within such meaning is a question of fact that we review for clear error. *Id.*; *Marcel Watch Co. v. United States,* 11 F.3d 1054, 1056 (Fed.Cir.1993). The parties filed cross-motions for summary judgment and agree that there are no disputed issues of material fact. Therefore, the sole issue is a matter of properly interpreting the pertinent sections of the HTSUS. *See Rollerblade, Inc. v. United States,* 112 F.3d 481, 483 (Fed.Cir.1997) ("[N]one of the pertinent characteristics of the merchandise is in dispute, and thus the sole issue is a matter of properly interpreting the classification term at issue -footware- to determine whether the scope of that term is broad enough to encompass the items with the particular characteristics").

SGI asserts that its Chill coolers should be classified under Headings 3923, 3924, or 3926 based on the plastic material composition of the cooler, its use for preserving specific items, food and beverages, and our analysis of the classification of the identical goods under TSUS in *Sports Graphics.* SGI's ar-

gument focuses on the items contained in the coolers and the purpose for containing them, *i.e.,* to store and preserve food or beverages and maintain their cold temperature over time.

The United States argues that the Court of International Trade properly classified the coolers under subheading 4202.92.90, HTSUS, because they are *ejusdem generis* with the exemplars of Heading 4202. The United States supports the Court of International Trade's refusal to apply the reasoning in *Sports Graphics* because there are material differences between the comparable provisions of the TSUS and the HTSUS. Heading 4202, HTSUS, is a much broader provision than the luggage provision under TSUS, the United States argues, and the pertinent language of item 772.15 (or 772.16), TSUS, under which we classified the coolers in *Sports Graphics,* was omitted from the HTSUS. By applying our analysis of Heading 4202 in *Totes,* in which we found that the unifying characteristics of the exemplars is whether the merchandise is designed to organize, store, protect and carry various items, the United States argues that the Court of International Trade properly found that the coolers at issue are similar containers because storage and protection are sufficiently broad concepts to embrace preservation accomplished by insulating materials that affect the rate of temperature change.

In *Sports Graphics,* we stated that:

Under the rule of *ejusdem generis,* which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. As applicable to classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms.

*Sports Graphics,* 24 F.3d at 1392 (citations omitted).

In *Sports Graphics* we agreed with the trial court that the proper classification of

the coolers involved a focus on whether food or beverage is involved. *Id.* at 1393 and 1394. The analysis of Heading 4202, HTSUS, in *Totes* does not vitiate this determination. In *Totes* we stated that the containers listed *eo nomine* in subheading 4202.92.9020 had the essential characteristic of organizing, storing, protecting, and carrying various items. 69 F.3d at 498. In this analysis, we distinguished *Sports Graphics* as follows:

> We held [in *Sports Graphics*] that "the merchandise had a different purpose, the storage of food or beverage, which precluded the merchandise from being *ejusdem generis* with the exemplars listed in the luggage provision." Moreover, the specific use for food was predominant over the more general description as luggage. Therefore, we affirmed the trial court's determination that the coolers were classifiable as items for storing food or beverages under item 772.15, TSUS, and were not classifiable as luggage under item 706.62, TSUS.

*Totes,* 69 F.3d at 498 (quoting *Sports Graphics,* 24 F.3d at 1393).

■ In applying the rationale of *Sports Graphics* to the identical merchandise at issue in this case, we again must focus on whether food or beverages are involved with the *eo nomine* exemplars set forth in the provisions in the HTSUS at issue. The relevant portion of Heading 4202 found by the Court of International Trade to encompass the coolers is as follows:

4202 Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of plastic sheeting, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials:

 Articles of a kind normally carried in the pocket or in the handbag:

 Other:

4202.92 With outer surface of plastic sheeting or of textile materials:

  Travel, sports and similar bags:

   With outer surface of textile materials:

   . . .

  Other:

4202.92.90   Other              20%

---

As under the comparable luggage provision under TSUS, none of the exemplars under subheading 4202.92.90 involves containment of any food or beverage. The additional exemplars in HTSUS that the Court of International Trade states makes the provision broader than the comparable luggage provision under TSUS also do not include containers that organize, store, protect, or carry food or beverages. An alternative classification under HTSUS presented by SGI, however, does encompass exemplars that are *ejusdem generis* with the coolers because their purpose is to contain food and beverages.

■ The classification under HTSUS that we hold is the appropriate classification for the coolers is subheading 3924.10.50. Head-

---

ing 3924 is the successor provision to TSUS item 772.15 (or 772.16). This provision reads as follows:

3924    Tableware, kitchenware, other household articles and toilet articles, of plastics:

3924.10    Tableware and kitchenware:

Salt, pepper, mustard and ketchup dispensers and similar dispensers

Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes and platters

Trays

3924.10.50    Other                                                     3.4%

---

The exemplars listed in Heading 3924 encompass various household containers for foodstuffs such as salt, pepper, mustard, and ketchup dispensers and serving pieces for food. The Explanatory Notes accompanying Heading 3924 also offer guidance in interpreting this heading. *Totes*, 69 F.3d at 500; *see also Rollerblade*, 112 F.3d at 486 n. 3 (Although these Explanatory Notes are not controlling legislative history, "they are nonetheless intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting its subheadings.") The explanatory notes specifically mention "luncheon boxes," an article similar to the coolers at issue, as "other household articles."[1] As the Court of International Trade found, the coolers may be considered "household articles" because "[t]he coolers may be used in a number of locations where food or beverages might be consumed, such as in and around the home and during trips away from home on picnics, sporting, and at spectator and participation sporting events." *SGI*, 917 F.Supp. at 825.

### CONCLUSION

We hold that the proper classification for the coolers is subheading 3924.10.50, HTSUS, carrying an ad valorem tax of 3.4%.

*REVERSED.*

---

1.  NONE OF THE ALTERNATIVE CLASSIFICATIONS OFFERED BY SGI SPECIFICALLY CONTAINED FOODSTUFFS.