Opinion for the court filed by Circuit Judge TARANTO.
Dissenting Opinion filed by Circuit Judge REYNA.
TARANTO, Circuit Judge.
These related actions, which the Court of International Trade tried together, require the classification of certain clothing under the Harmonized Tariff Schedule .of the United States (HTSUS). Specifically at issue are the Bra Top, which is imported by Victoria’s Secret Direct, LLC, and the Bodyshaper, which is imported by Lerner New York, Inc. Both are sleeveless garments, made of knit fabric, worn as tops. Both are designed for two purposes, body coverage and bust support, providing enough of each for a wide range of women to wear them in a wide range of public settings without needing a garment on top or a separate brassiere underneath. The Court of International Trade classified them under heading 6114 of the HTSUS, which covers “[o]ther garments, knitted or crocheted.” Lerner New York, Inc. v. United States, 908 F.Supp.2d 1313 (Ct. Int’l Trade 2013) (“Lerner”); Victoria’s Secret Direct, LLC v. United States, 908 F.Supp.2d 1332 (Ct. Int’l Trade 2013) (“Victoria’s Secret ”).
Victoria’s Secret and Lerner contend that the garments should have been classified under heading 6212, which covers *1104 “[b]rassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof.” (Emphasis added). We reject classification of these items under heading 6212. The Bra Top and Bodysha-per are not “similar articles” under heading 6212 because they do not possess the unifying characteristics of the listed items in that heading. In this appeal, once heading 6212 is ruled out, the Bra Top and the Bodyshaper must be classified under heading 6114. And once heading 6114 is chosen, there is no dispute about which subheading applies to each garment. We therefore affirm the judgment of the Court of International Trade.
BACKGROUND
A
Both Victoria’s Secret’s Bra Top and Lerner’s Bodyshaper were designed to be a .combination of two garments: a camisole, which is similar to a tank top in covering the body from the waist to above the bust, but generally with narrower shoulder straps and a lower neckline; and a brassiere. The Bra Top and the Bo-dyshaper both contain a “shelf bra”: an interior layer of fabric — whose upper edge is attached to the camisole and whose lower edge is an elastic band not attached to the camisole — that provides bust support, though to a lesser degree than many (though not all) brassieres. See, e.g., Victoria’s Secret at 1339 n. 7. This combination garment is “known in the apparel industry as a ‘shelf bra camisole,’ ” a single garment designed so that many women will wear it in ordinary public settings without a layering garment on top or a separate brassiere underneath. Id. at 1340, 1343; Lerner at 1321, 1323.
“A shelf bra camisole is designed for two purposes, coverage and support.” Victoria’s Secret at 1343; Lerner at 1323. As to coverage, it has not been disputed here that the Bra Top and the Bodyshaper cover portions of the wearer’s upper body for warmth and modesty. See, e.g., Victoria’s Secret J.A. 746 (plaintiffs’ joint, post-trial proposed findings of fact, recognizing that both products are “garments] worn above the waist” whose “function ... is to provide modesty or warmth”). The Court of International Trade made findings to that effect, stating that “[t]he uncontested facts establish that the [Bra Top and the Bo-dyshaper] provide [] partial covering of the wearer’s torso for warmth and modesty.” Victoria’s Secret at 1355; Lerner at 1327; see also Lerner at 1321 (“One of the purposes of the Bodyshaper is to provide modesty to the wearer.”). The degree of coverage is more than that provided by a “brassiere,” as the term is ordinarily used, and the coverage is sufficient that the garment is designed generally to be worn in public without layers over the garment. See Victoria’s Secret at 1341 (‘Victoria’s Secret markets the Bra Top as a wardrobe ‘essential’ that can be worn by itself as a top.”); Lerner at 1321 (“The Bodyshaper is intended to be worn in public.”).
As to body support, the parties disputed the degree to which — though not the fact that — the Bra Top and. the Bodyshaper serve that purpose. Ultimately, the Court of International Trade found that the Bra Top and the Bodyshaper are “designed to provide support to the bust of the wearer” and in fact “provide [ ] a certain degree of such support when worn.” Victoria’s Secret at 1344; Lerner at 1324. The court found that, for both products, the “cup, underbust band, and straps all work together to provide support to the wearer’s bust” “in a manner identical to that of soft-cup brassieres.” Victoria’s Secret at 1343-44; Lerner at 1323. Because the garments provide some level of built-in support, “a separate brassiere ... need not be worn underneath” the Bra Top or the Bo- *1105 dyshaper. Victoria’s Secret at 1343; Lerner at 1323.
Victoria’s Secret and Lerner, in marketing the Bra Top and Bodyshaper, emphasized the dual purposes of coverage and support. For example, the Court of International Trade found that “ ![m]ost important’ to Victoria’s Secret, from ‘a merchandising perspective,’ is that the Bra Top provides the wearer ‘[t]he support of a bra and the use of a top in one.’ ” Victoria’s Secret at 1341; see also id. at 1341-42 (“Victoria’s Secret brought the Bra Top into its assortment ‘because it was a top that provided support in lieu of a bra.’ ”). Similarly, the court found that “Lerner’s website marketing materials for the Bo-dyshaper depict the garment being worn with pants or a skirt, and often with no layering garment being worn over the Bodyshaper,” Lerner at 1320, and Lerner also identifies the “shelfbra” aspect in marketing the Bodyshaper, Lerner J.A. 631.
B
Lerner imported a shipment of Bodyshapers in 2005, and Victoria’s Secret imported a shipment of Bra Tops in 2006. The Bureau of Customs and Border Protection (CBP) classified Victoria’s Secret’s Bra Tops under subheading 6109.10.00 of the HTSUS, which has a 16.5% duty rate and covers “T-shirts, singlets, tank tops and similar garments, knitted or crocheted: Of cotton.” On the other hand, CBP classified Lerner’s Bodyshapers under subheading 6114.30.10, which has a 10.8% duty rate. The Explanatory Notes to the HTSUS describe heading 6114 — which reads, “Other garments, knitted or crocheted” — as a residual provision that “covers knitted or crocheted garments which are not included more specifically in the preceding headings of this Chapter.” Explanatory Note 61.14.
Victoria’s Secret and Lerner each protested under 19 U.S.C. § 1514, and CBP denied both protests. On November 21, 2007, the companies filed separate suits in the Court of International Trade, each contending that its merchandise should have been classified under subheading 6212.90.00, which has a 6.6% duty rate and reads:
6212: Brassieres, girdles, corsets, 'braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted:
6212.90.00: Other.
In the alternative, the two companies argued for classification under heading 6114.
The Court of International Trade— “[d]ue to the presence of common issues of fact,” Victoria’s Secret at 1337; Lerner at 1317 — tried the cases together during a three-day bench trial. On May 1, 2013, the court issued an opinion and judgment in each case, classifying the Bra Top and the Bodyshaper under the residual garment provision, heading 6114. The court’s analysis in each opinion proceeded in three steps, considering, in turn, whether the merchandise should be classified under the tank-top provision (heading 6109), the brassiere provision (heading 6212), and the residual garment provision (heading 6114).
The court first rejected the government’s argument that the garments should be classified under heading 6109 as “tank tops” or as an article “similar” to “T-shirts, singlets, [and] tank tops.” Victoria’s Secret at 1351; see Lerner at 1325-26. The government does not appeal the court’s determination that the Bra Top and the Bodyshaper are not properly classified under heading 6109. That heading therefore is not at issue in this appeal.
The Court of International Trade next addressed the brassiere provision, heading *1106 6212, concluding that neither the Bra Top nor the Bodyshaper is “a garment of a type that is properly classified under heading 6212, HTSUS, being dissimilar to the garments listed in the article description with respect to the essential characteristic and as to purpose.” Victoria’s Secret at 1355; Lerner at 1328. The court examined the text of the heading, finding that “[a]ll of the exemplars in the heading 6212 article description — brassieres, girdles, corsets, braces, suspenders, and garters— have as their essential characteristic and purpose either support of a part of the body or support of a garment.” Victoria’s Secret at 1354; Lerner at 1327. Turning to the merchandise at issue, the court then found that, although the Bra Top and the Bodyshaper do “provide [ ] bust support,” “it would be inconsistent with facts the court found in this case to conclude that support is the essential characteristic or purpose of’ either garment. Victoria’s Secret at 1354; Lerner at 1327 (emphasis in original in both opinions). The court added that it could not conclude that either the Bra Top or the Bodyshaper “on the whole is ‘similar’ to a brassiere or to any other garment or article named in the heading.” Victoria’s Secret at 1355; Lerner at 1328 (emphasis in original in both opinions). The court therefore rejected classification of the merchandise under heading 6212.
Having found classification improper under the tanktop provision and the brassiere provision, the Court of International Trade classified the Bra Top and the Bodyshaper under particular subheadings within heading 6114, the residual garment provision. Because the Bra Top is a blend of 95% cotton and 5% spandex, the court classified it under subheading 6114.20.00, which has a 10.8% duty rate for garments that come under heading 6114 and are made “[o]f cotton.” Victoria’s Secret at 1359-60. Because the Bodyshaper is a blend of two synthetic fibers, nylon and spandex, the court classified it under subheading 6114.30.10, which has a 28.2% duty rate for garments that come under heading 6114 and consist of “[t]ops” “[o]f man-made fibers.” Lerner at 1332.
Victoria’s Secret and Lerner timely appealed to this court, each arguing that its respective shelf bra camisole is “similar” to the items listed in heading 6212 — “[brassieres, girdles, corsets, braces, suspenders, [and] garters” — and should therefore be classified as a “similar article []” under the heading. This court has jurisdiction under 28 U.S.C. § 1295(a)(5).
Discussion
“Proper classification of goods under the HTSUS entails first ascertaining the meaning of specific terms in the tariff provisions and then determining whether the subject merchandise comes within the description of those terms.” Millenium Lumber Distrib. Ltd. v. United States, 558 F.3d 1326, 1328 (Fed.Cir.2009). The first step presents an issue of law decided here de novo, the second an issue of fact subject to clear-error review. See id.
“The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the. subheadings provide a more particularized segregation of the goods within each category.” Wilton Indus., Inc. v. United States, 741 F.3d 1263, 1266 (Fed.Cir.2013). “The classification of merchandise under the HTSUS is governed by the principles set forth in the [General Rules of Interpretation (GRIs) ] and the Additional U.S. Rules of Interpretation.” Id. We apply the GRIs in numerical order, see CamelBak Prods., LLC v. United States, 649 F.3d 1361, 1364 (Fed.Cir.2011), so that *1107 if a particular Rule resolves the classification issue, we do not look to subsequent Rules, see Lemans Corp. v. United States, 660 F.3d 1311, 1316 (Fed.Cir.2011).
GRI 1 provides that “classification shall be determined according to the terms of the headings and any relative section or chapter notes.” This case involves two shelf-bra camisoles — Victoria's Secret’s Bra Top and Lerner’s Bodyshaper — each a single garment designed for two purposes, coverage and support, and generally worn in public without need for a layering garment on top or a separate brassiere underneath. Victoria’s Secret at 1340, 1343; Lerner at 1321, 1323. We must decide if these garments are “similar articles” under heading 6212 of the HTSUS, which covers “[bjrassieres, girdles, corsets, braces, suspenders, garters and similar articles.”
The parties agree that the term “similar” in this case expressly invokes the interpretive principle of ejusdem generis, and we proceed on that premise.[1] What is required is identification of the unifying properties óf the items listed in heading 6212, an issue of heading interpretation that is a question of law. This is a matter of common-sense assessment of the particular list and what unifies the items in that list — which may be the presence of certain properties and the absence of others. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 207-08 (2012) (“Consider the listed elements, as well as the broad term at the end, and ask what category would come into the reasonable person’s mind.”); see also 2A Norman Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47:18 (7th ed.2007) (ejusdem generis “rests ... on practical insights about everyday language usage which guide our general understanding about when two things are alike or different” and is not “merely an abstract exercise in semantics and formal logic”). Applying the phrase “and similar articles” to the merchandise at issue, then, requires determining whether the merchandise, considering all of its features, shares the unifying characteristics of the particular heading.
Avenues in Leather, Inc. v. United States, 178 F.3d 1241 (Fed.Cir.1999), expresses this approach. “[F]or any imported merchandise to fall within the scope of the general term or phrase, the merchandise must possess the same essential characteristics or purposes that unite the listed examples preceding the general term or phrase.” Id. at 1244. The first step is to “consider the common characteristics or unifying purpose of the listed exemplars in a heading.” Id. The second is to consider the merchandise at issue with the identified unifying characteristics (or purpose) in mind. Classification of the merchandise within the heading “is appropriate only if’ the merchandise shares the heading’s unifying characteristics, and one way merchandise would fail to do so is by having “a more specific primary purpose that is inconsistent with the listed exemplars.” Id.
Avenues in Leather confirms what is clear as a matter of common sense: the unifying characteristics may consist of both affirmative features and limitations. The reference to the merchandise’s “primary purpose” as inconsistent with a particular heading’s list recognizes that merchandise may well share affirmative features of the heading’s list but have other features that then defeat “similari *1108 ty” — necessarily meaning that the unifying characteristics of the heading’s list include a limitation that excludes such other features (which may depend on their prominence). And, indeed, in referring to a purpose of the merchandise that is “inconsistent with” a heading’s list, what the court in Avenues in Leather cited were cases that involved purposes that readily could be added to the affirmative functions of the listed items. The additional purpose of the merchandise at issue in those cases could be deemed “inconsistent” only because a limitation on function or purpose was among the heading’s unifying characteristics. Id. at 1244, citing SGI, Inc. v. United States, 122 F.3d 1468, 1472 (Fed.Cir.1997) (heading covering a variety of cases did not cover coolers for storing and carrying food or beverages); Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1392-93 (Fed.Cir.1994) (similar for pre-HTSUS heading of Tariff Schedule of the United States (TSUS)). The court’s observation that the “analysis must consider .the imported merchandise as a whole” reinforces the point: even if the merchandise at issue contains certain features shared by those listed in a heading, the presence of other features in the merchandise “as a whole” may negate similarity. Avenues in Leather, 178 F.3d at 1246.
What characteristics unify a heading’s list — including what features are present in the listed items and what limits there are on the presence of other features— depends on the particular heading. For heading 6212, at issue here, we conclude that what unifies the list is that all of the listed items have support as their paramount function (whether for the body or for some other garment). “Brassieres, girdles, corsets, braces, suspenders, [and] garters” all share that characteristic. They provide body or other-garment support and do so as their paramount function; in particular, the primacy, of that function is not overridden by an additional outerwear coverage function so significant as to dominate or even to be of roughly the same importance as the support function. This is a matter of common-sense interpretation of the ordinary meaning of the terms of the heading, which confirms the limitation as well as the positive functionality. And the use of the full term “similar articles ” in heading 6212 indicates the need to compare the entire article at issue to those listed in the heading to determine if the article as a whole, considering all of its features and functions, shares the unifying characteristic of those listed — here, the paramount function of support.
A few examples confirm the limitation inherent in the heading 6212 list. Certain garments not listed in the heading provide body support, but could not reasonably be considered in the same category as “[b]rassieres, girdles, corsets, braces, suspenders, [and] garters.” Many evening gowns, specifically backless gowns, have built-in bust support sufficient to make a separate brassiere unneeded. Yet it is not reasonable to say that an evening gown is a “similar article [ ]” — an article of clothing similar to a brassiere or the others listed in heading 6212 — and Victoria’s Secret and Lerner agreed at oral argument. See Oral Argument at 4:00-5:06. Likewise, some jeans are designed to flatten, trim, and lift certain parts of the body. Such a pair of jeans cannot reasonably be called a “similar article” under heading 6212 — an article similar to “[b]rassieres, girdles, corsets, braces, suspenders, [and] garters.”
The Court of International Trade made findings' that establish that the articles here did not have support as their paramount function, without a comparably important outerwear coverage function. After finding that the Bra Top and the Bodysha- *1109 per are “designed to provide support to the bust of the wearer,” Victoria’s Secret at 1344; Lerner at 1324, the court concluded that “it would be inconsistent with facts the court found in this case to conclude that body support is the essential characteristic or purpose” of either garment. Victoria’s Secret at 1354; Lerner at 1327 (emphasis in original in both opinions). That finding must be understood in light of the series of findings about the dual functions of the garments, including prominently the function of outerwear coverage as a top. E.g., Victoria’s Secret at 1339-42; Lerner at 1319-21. And the court summed up its findings by saying that it could not conclude that either the Bra Top or the Bodyshaper “on the whole is ‘similar’ to a brassiere or to any other garment or article named in the heading.” Victoria’s Secret at 1355; Lerner at 1328 (emphasis in original in both opinions). The essence of these findings is that these dual-function garments have too much of the non-support function to share “the essential characteristic” of the items listed in heading 6212.
The evidence supports the finding that the Bra Top and the Bodyshaper do not share the unifying characteristic of heading 6212. The Court of International Trade noted the evidence, and none of the parties dispute, that both garments are “designed for two purposes, coverage and support.” Victoria’s Secret at 1343; Lerner at 1323. There was ample evidence that each garment is meant to be wearable in public without needing an additional layer. See Victoria’s Secret at 1341 (“Victoria’s Secret markets the Bra Top as a wardrobe ‘essential’ that can be worn by itself as a top.”); Lerner at 1321 (“The Bodyshaper is intended to be worn in public.”). Victoria’s Secret and Lerner, in marketing their garments, gave at least comparable prominence to the ordinary outerwear coverage function as to the support function. See Victoria’s Secret at 1341 (“ ‘Most important’ to Victoria’s Secret, from ‘a merchandising perspective,’ is that the Bra Top provides the wearer ‘[t]he support of a bra and the use of a top in one.’ ” (alteration in original)); Lerner at 1320 (“Lerner’s website marketing materials for the Bodyshaper depict the garment being worn with pants or a skirt, and often with no layering garment being worn over the Bodyshaper.”).
Our precedents in this area show that the inquiry requires an analysis of particular headings and particular merchandise. In Avenues in Leather, the relevant unifying characteristics of HTSUS heading 4202 (as it then read) were, simply, “organizing, storing, protecting, and carrying various items.” 178 F.3d at 1245. The merchandise at issue there had those characteristics and did not have anything else “inconsistent” with any limitation found inherent in the 4202 list. Id. On the other hand, the merchandise did not come under HTSUS heading 4820 because the unifying characteristics of that heading were such as to preclude an item with “prominen[t] ... organizing, carrying, and storing features,” and only possible writing-related features in some configurations. Id. at 1245-46.
Earlier, in Totes, Inc. v. United States, 69 F.3d 495 (Fed.Cir.1995), this court had similarly interpreted heading 4202 of the HTSUS as having “organizing, storing, protecting, and carrying various items” as unifying characteristics. Id. at 498. The merchandise at issue, a “rectangular case used to organize and store items such as motor oil, tools, and jumper cables in an automobile trunk,” id. at 496, was “not removed from classification under [heading 4202] simply because it [was] intended to organize, store, and protect items associated with a motor vehicle,” id. at 498. Distinguishing Sports Graphics, supra, a case *1110 decided under the TSUS, the court tied its discussion to the particular merchandise at issue and whether it had a specific purpose inconsistent with any limitation inherent in heading 4202. 69 F.3d at 498-99.
Sports Graphics, supra, had held that the merchandise at issue was not a “like article'[ ]” under the TSUS provision (close to HTSUS heading 4202), because the merchandise “ha[d] a different purpose”— not merely a more specific one — than the listed examples. 24 F.3d at 1393. And in SGI, supra, decided after Totes, this court reiterated that the same conclusion applied to (the then current language of) heading 4202 of HTSUS, finding that coolers for containing food and beverages were not “similar containers” under that heading. 122 F.3d at 1472-73. As in the present case, a purpose of the merchandise at issue was inconsistent with the heading because the unifying characteristics inherently limited the presence of certain purposes, over and above requiring certain purposes. See id.
This heading-specific approach is especially appropriate under the HTSUS. In JVC Co. of America v. United States, 234 F.3d 1348 (Fed.Cir.2000), we rejected a pre-HTSUS “doctrine” the courts had created that imposed a reading on all listings of a certain sort (the so-called “more than” doctrine), rather than discerning the natural meaning of the words of each particular listing. Id. at 1353-54. We reasoned that such judicially imposed “rules of interpretation” were not'proper under the HTSUS, which supplies its own defined principles of interpretation. Id. The lesson is that the analysis of what is “similar” under a heading depends on what is listed in that particular heading. The task is language interpretation in context, not judicial imposition by doctrine. Cf. Northwest, Inc. v. Ginsberg, — U.S.-, 134 S.Ct. 1422, 1432-33, 188 L.Ed.2d 538 (2014) (in contract-law setting, distinguishing doctrine imposing result from context-specific interpretation). Our heading-specific analysis performs the required interpretive task.
For those reasons, we reject Victoria’s Secret’s and Lerner’s challenges to the Court of International Trade’s holding that the Bra Top and the Bodyshaper are outside heading 6212. That conclusion ends this appeal. Heading 6109, though once at issue in these cases, no longer is. There is no basis for rejecting the residual provision, heading 6114, once headings 6212 and 6109 are rejected. And Victoria’s Secret and Lerner do not dispute the choice of subheadings if heading 6114 applies.
Conclusion
We affirm the judgment of the Court of International Trade.
AFFIRMED

. When a general term ends a list of items in a statute, one circumstance in which the ejus-dem generis principle does not apply to construing the general term is when the items "do not fit into any kind of definable category.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 209 (2012).