# United States Court of Appeals
# for the Federal Circuit

---

**SC JOHNSON & SON INCORPORATED,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1476

---

Appeal from the United States Court of International Trade in No. 1:14-cv-00184-JCG, Judge Jennifer Choe-Groves.

---

Decided: June 2, 2021

---

MICHAEL EDWARD ROLL, Roll & Harris LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by BRETT HARRIS, Washington, DC.

MONICA PERRETTE TRIANA, International Trade Field Office, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, JEANNE DAVIDSON, AIMEE LEE, JUSTIN REINHART MILLER.

---

Before MOORE, *Chief Judge**, DYK and O'MALLEY, *Circuit Judges.*

DYK, *Circuit Judge.*

S.C. Johnson appeals the Court of International Trade's ("Trade Court") determination that Ziploc® brand reclosable sandwich bags are classified under Harmonized Tariff Schedule of the United States ("HTSUS") heading 3923. We affirm.

## BACKGROUND

On May 15, 2013, S.C. Johnson imported 1,512 cases of Ziploc® brand reclosable sandwich bags from Thailand. The bags have a single zipper closure and measure six and one-half inches by five and seven-eighths inches. They are manufactured from polyethylene resin pellets and are tested to ensure compatibility with food contact.

Upon entry, Customs classified the sandwich bags under HTSUS subheading 3923.21.00, covering "[a]rticles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures, of plastics: Sacks and bags (including cones): Of polymers of ethylene." On June 26, 2014, S.C. Johnson filed a protest, which was deemed denied.

S.C. Johnson then initiated this action before the Trade Court, contending that the sandwich bags should have been classified under HTSUS subheading 3924.90.56, covering "[t]ableware, kitchenware, other household articles and hygienic or toilet articles, of plastics: Other: Other." S.C. Johnson additionally argued that, because the merchandise should have been classified under subheading 3924.90.56 and was imported from Thailand, the bags were eligible for duty-free treatment under the Generalized System of Preferences.

The parties filed cross-motions for summary judgment before the Trade Court. The Trade Court determined

---

*    Chief Judge Moore assumed the position of Chief Judge on May 22, 2021.

"HTSUS Heading 3923 is a principal use provision and encompasses goods of plastic used to carry or transport other goods of any kind." J.A. 34. The Trade Court also concluded that "HTSUS Heading 3924 is an *eo nomine* provision that encompasses plastic goods of or relating to the house or household." *Id.* at 37. The Trade Court declined to determine on summary judgment whether the sandwich bags were *prima facie* classifiable under either heading.

After a bench trial on the papers, the Trade Court conducted a principal use analysis using the *Carborundum* factors to determine whether the sandwich bags were *prima facie* classifiable under HTSUS heading 3923.[1] The court concluded that "the majority of the *Carborundum* factors support[ed] classification under HTSUS Heading 3923" and that "the subject merchandise [we]re *prima facie* classifiable under" that heading. J.A. 21.

The Trade Court also determined that the sandwich bags were *prima facie* classifiable under HTSUS heading 3924, noting that "[t]he sandwich bags are designed in a

---

[1] The *Carborundum* factors are used to determine whether merchandise is commercially fungible with the particular class or kind of merchandise that falls under a principal use provision. *See Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312–13 (Fed. Cir. 2012) (citing *United States v. Carborundum*, 536 F.2d 373, 377 (CCPA 1976)). Under *Carborundum*, courts look to (1) use in the same manner as merchandise which defines the class; (2) the general physical characteristics of the merchandise; (3) the economic practicality of so using the import; (4) the expectation of the ultimate purchasers; (5) the channels of trade in which the merchandise moves; (6) the environment of the sale, such as accompanying accessories and the manner in which the merchandise is advertised and displayed; and (7) the recognition in the trade of this use. *Id.* at 1313.

manner consistent with household food storage" and that "S.C. Johnson's internal study indicate[d] that the sandwich bags can be found in a household." J.A. 22.

Because the sandwich bags were *prima facie* classifiable under both headings at issue, the court applied General Rule of Interpretation ("GRI") 3, which dictates that goods should be classified under the heading that provides the most specific description.[2] The court concluded that the sandwich bags were properly classified under HTSUS heading 3923 because that heading "has requirements that are more difficult to satisfy and describe the article with a greater degree of accuracy and certainty." J.A. 24. Because the products were classified under HTSUS heading 3923, the Trade Court did not reach whether the sandwich bags were eligible for duty-free treatment under the Generalized System of Preferences.

S.C. Johnson appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The classification of merchandise "involves two underlying steps: (1) determining the proper meaning of the tariff provisions, which is a question of law; and (2)

---

[2] The GRIs, along with the Additional U.S. Rules of Interpretation ("ARIs"), "govern the proper classification of all merchandise and are applied in numerical order." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). GRI 3 provides in relevant part that:

> When . . . goods are, prima facie, classifiable under two or more headings . . . the heading which provides the most specific description shall be preferred to headings providing a more general description.

GRI 3(a).

determining which heading the particular merchandise falls within, which is a question of fact." *Deckers Corp. v. United States*, 532 F.3d 1312, 1314–15 (Fed. Cir. 2008). "We review questions of law de novo, including the interpretation of the terms of the HTSUS, whereas factual findings of the Court of International Trade are reviewed for clear error." *Id.* at 1315. The issues here are legal issues—the interpretation of HTSUS headings.

I

First, we address S.C. Johnson's argument that the Trade Court erred in determining that the sandwich bags are classifiable under HTSUS heading 3923. That heading provides for classification of

> [a]rticles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures, of plastics.

HTSUS heading 3923.

The Trade Court concluded that HTSUS heading 3923 "encompasses goods of plastic used to carry or to transport other goods of any kind." J.A. 34. S.C. Johnson argues that HTSUS heading 3923 should instead apply only to "articles used for commercial purposes," Appellant's Br. 46, that is, the transportation of goods between sellers and their suppliers rather than the transportation of goods by customers. We disagree.

In support of its interpretation, S.C. Johnson urges that HTSUS heading 3923 should be construed to have the same scope as a predecessor tariff provision, Tariff Schedules of the United States ("TSUS") item 772.20, which encompassed

> [c]ontainers, of rubber or plastics, with or without their closures, chiefly used for the packing, transporting, or marketing of merchandise.

TSUS item 772.20.

Because of the reference to "merchandise," TSUS item 772.20 was construed as limited to the packing, transport, or marketing of goods in the stream of commerce. *See Imperial Packaging Corp. v. United States*, 535 F. Supp. 688, 689–90 (Ct. Int'l Trade 1981) (concluding that plastic shopping bags used by customers to carry merchandise did not fall under TSUS 772.20 because the heading was "not intended to encompass merchandise bags which retail stores furnish to their customers for carrying purchases home").

None of the cases on which S.C. Johnson relies was decided by this court or its predecessor. In any event, cases limiting TSUS item 772.20 to the packing or transportation of commercial goods do not apply to the "differing language of the more recently enacted HTSUS." *Mitsubishi Int'l Corp. v. United States*, 182 F.3d 884, 886 (Fed. Cir. 1999); *see also Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1367 (Fed. Cir. 1998) (addressing the differences between an HTSUS sub-heading and TSUS item and stating that "[w]e can safely assume that Congress changed the language for a reason"). The language of HTSUS heading 3923 differs from TSUS item 772.20 item in two material respects. First, HTSUS heading 3923 changed "merchandise" to "goods." As the government correctly points out, the term "goods" is broader than "merchandise" and includes "both personal property as well as items of trade." Appellee's Br. 21; *see also Good*, *Webster's II New College Dictionary* 480 (1999) (defining "goods" as "a. Commodities: wares . . . b. Portable personal property").

Second, the provision was changed to apply to items for "conveyance or packing," HTSUS heading 3923, rather than "packing, transporting, or marketing," TSUS item 772.20. Thus, HTSUS 3923 applies more broadly to articles for the "conveyance or packing of goods," and is not limited to transportation between sellers and their suppliers.

The materiality of this difference in language is confirmed by a comparison of the Summary of Trade and Tariff Information for TSUS item 772.20 and the current Explanatory Notes for HTSUS heading 3923.  The Summary of Trade and Tariff Information states that

> [b]ags and similar nonrigid articles which are not covered here under TSUS item 772.20 include disposable household bags such as garbage and garden bags, sandwich bags, and food bags.

*Summary of Trade and Tariff Information*, TSUS item 772.20, 772.85, and 772.86 (April 1981), U.S. International Trade Commission.  By contrast, the Explanatory Notes for HTSUS Heading 3923 state that the heading covers

> [c]ontainers such as boxes, cases, crates, **sacks and bags (including cones and refuse sacks)**, casks, cans, carboys, bottles, and flasks.

J.A. 14 (citing EN 39.23(a), (c) (2012) (emphasis added)). Thus, while TSUS item 772.20 did not cover disposable household bags, the modified language of HTSUS heading 3923 does.

Next, S.C. Johnson contends that the Trade Court's determination as to the scope of HTSUS heading 3923 is inconsistent with Customs rulings finding that heading 3923 should be limited to "articles used to package or convey bulk or commercial merchandise."  Appellant's Br. 43–44 (emphasis omitted); *see also* HQ H026225 (June 4, 2009) (stating that HTSUS heading 3923 "provides for cases and containers used for shipping purposes" and therefore the heading "provides for cases and containers of bulk goods and commercial goods, not personal items").  These Customs rulings are not entitled to *Chevron* deference and are not persuasive.  *See United States v. Mead Corp.*, 533 U.S. 218, 221 (2001) (holding that a Customs classification ruling "has no claim to judicial deference under *Chevron*" but can "claim respect according to its persuasiveness").  Nor

are they consistent. As the government correctly points out, Customs previously classified Dow Chemical's "polyethylene food bags with minigrip closures" under HTSUS subheading 3923.21.00, the same provision at issue in this case. HQ 086579 (March 7, 1990).

Finally, S.C. Johnson contends that our prior decision in *SGI, Inc. v. United States*, 122 F.3d 1468 (Fed. Cir. 1997), "reject[ed] classification of household food storage articles as 'articles for the conveyance or packing of goods' within HTSUS heading 3923." Appellant's Br. 45. In *SGI*, this court summarily ruled that soft-sided vinyl insulated coolers for transporting food or beverages did not fall within the scope of HTSUS heading 3923 because heading 3923 does not specifically mention "foodstuffs." *SGI*, 122 F.3d at 1473 n.1. S.C. Johnson appears to interpret this statement as a determination that HTSUS 3923 does not apply to personal food transportation or storage. However, there is nothing in HTSUS heading 3923 that excludes containers for transporting foodstuffs. As the explanatory notes to HTSUS heading 3923 illustrate, the heading includes "boxes, cases, crates, sacks and bags (including cones and refuse sacks), casks, cans, carboys, bottles and flasks" and "[c]ups without handles having the character of containers used for the packing or conveyance of certain foodstuffs." EN 39.23. Thus, HTSUS heading 3923 encompasses containers for the packing or transport of foodstuffs. Whatever the meaning of *SGI*, it does not help S.C. Johnson here.[3]

---

[3]    S.C. Johnson also relies on the Explanatory Notes for HTSUS heading 3923. The Explanatory Notes exclude household articles "which are used as tableware or toilet articles and do not have the character of containers for the packing or conveyance of goods, whether or not sometimes used for such purposes" from HTSUS heading 3923. EN 39.23. Thus, the Explanatory Notes make clear that this

S.C. Johnson does not appear to otherwise challenge that the sandwich bags are used for the packing or conveyance of goods. Nor could it. The record overwhelmingly shows that the sandwich bags are used for the transportation of food that is consumed away from home. As S.C. Johnson's witness, Amy Bigna, explained, the bags are "predominantly used for packing lunches, whether it be for someone to take it to work or to send it to school with your child." J.A. 735.

## II

Next, we address S.C. Johnson's challenge to the Trade Court's determination that HTSUS heading 3924 is an *eo nomine* provision rather than a use provision. If HTSUS heading 3924 is a use provision, then both HTSUS headings at issue would be use provisions, and under ARI 1(a), the "principal use" would govern classification of the sandwich bags. S.C. Johnson contends that the principal use of the bags is household food storage. We agree with the Trade Court that HTSUS heading 3924 is an *eo nomine* provision. As the Trade Court determined, the key inquiry under the terms of the heading is where the articles at issue are located, rather than how they are used. This heading provides in pertinent part for the classification of

> [t]ableware, kitchenware, other household articles
> and hygienic or toilet articles, of plastics.

HTSUS Heading 3924.

There are two types of HTSUS headings, *eo nomine* and use provisions. "An *eo nomine* provision 'describes an article by a specific name,' whereas a use provision describes

---

exclusion does not generally apply to household articles having "the character of containers for the packing or conveyance of goods," such as sandwich bags, regardless of whether the articles are located in the household.

articles according to their principal or actual use." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1164 (Fed. Cir. 2017) (quoting *Aromont*, 671 F.3d at 1312). On its face heading 3924 does not define its coverage by reference to the "use" of the goods in question. While a use provision need not expressly use the words "used for," *see StoreWALL, LLC v. United States*, 644 F.3d 1358, 1365 (Fed. Cir. 2011) (Dyk, J., concurring), "a use limitation should not be read into an *eo nomine* provision unless the name itself inherently suggests a type of use," *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).

In determining whether a provision inherently suggests a type of use, we have previously looked to dictionary definitions of heading terms. In *Minnetonka Brands, Inc. v. United States*, the Trade Court concluded that HTSUS heading 9503, covering "Other toys," was a principal use provision because dictionary definitions suggested that toys are "designed and used for amusement, diversion or play, rather than practicality." 110 F. Supp. 2d 1020, 1026 (Ct. Int'l Trade 2000). The Trade Court's reasoning in *Minnetonka* was adopted by this court in *Processed Plastics Co. v. United States*, 473 F.3d 1164, 1170 (Fed. Cir. 2006) ("We agree with the standard adopted in *Minnetonka* to determine whether merchandise should be classified as a toy.").

Other cases have determined that generic terms preceded by an adjective suggesting a manner of use can constitute principal use provisions. *See, e.g., Stewart-Warner Corp. v. United States*, 748 F.2d 663, 667 (Fed. Cir. 1984) (explaining that the TSUS term encompassing "bicycle speedometers" was "a term 'controlled by use' . . . because the noun 'bicycle' acts as an adjective modifying 'speedometer' in a way that implies use of the speedometer on a bicycle").

Here, the Trade Court noted that "'[h]ousehold' is defined as 'the maintaining of a house,' 'household goods and chattels,' 'a domestic establishment,' or 'of or relating to a

household."' J.A. 36 (quoting *Webster's Third New International Dictionary* 1096 (1993)); *see also id*. at 11. The court also determined that "'[a]rticle' is defined as an 'individual thing or element of a class; a particular object or item.'" *Id*. at 36 (quoting *The American Heritage Dictionary of the English Language* 101 (4th ed. 2000)); *see also id*. at 11. As the Trade Court concluded, these definitions do not suggest a specific type of use. Further, none of the terms in HTSUS heading 3924 acts as an adjective that suggests a type of use rather than a location where the objects can be found.

S.C. Johnson argues that "an unbroken line of cases" establishes that "household article" constitutes a use provision. Appellant's Br. 21. In support, S.C. Johnson relies on several cases in which this court or its predecessor determined that the different tariff term "household utensils" used in paragraph 339 of the Tariff Act of 1930 constituted a use provision. *See M. Pressner & Co. v. United States*, 42 CCPA 48, 49 (1954); *Frank P. Dow Co. v. United States*, 21 CCPA 282, 287 (1933); *see also Stewart-Warner Corp. v. United States*, 748 F.2d 663, 667 (Fed. Cir. 1984) (noting that the trade court had previously determined that "household utensils" was a use classification).

Even if "household utensils" were a use provision, that does not change the outcome of this case. As the government points out, the term "utensil" is defined as "an implement, instrument, or vessel used in a household and especially a kitchen." Appellee's Br. 33 (quoting *Utensil, Merriam-Webster*, https://www.merriam-webster.com/dictionary/utensil (last visited May 10, 2021)). Thus, the term "utensil," like the term "toy," suggests a specific use and could be construed as a use provision. *Processed Plastics*, 473 F.3d at 1170 (discussing the tariff term "Other toys"). As we have noted, in contrast, the term "Article" does not suggest a type of use and should not be construed as creating a use provision.

In *SGI*, this court determined that the items at issue (soft-sided coolers) fell under HTSUS heading 3924.10.50, explaining that "the coolers may be considered 'household articles' because '[t]he coolers may be used in a number of locations where food or beverages might be consumed.'" *SGI*, 122 F.3d at 1473 (quoting *SGI, Inc. v. United States*, 917 F. Supp. 822, 825 (Ct. Int'l Trade 1996), *rev'd*, 122 F.3d 1468) (alteration in original). Whether HTSUS heading 3924 constitutes a use provision or an *eo nomine* provision did not affect the result of that case. The coolers would have been classifiable under HTSUS heading 3924 even if the heading were an *eo nomine* provision because they were located in the household. We do not view *SGI* as determining that HTSUS heading 3924 was a use provision.[4]

S.C. Johnson also points to Customs' website, which states that "other household articles . . . [i]ncludes any article principally used in or around the home." Appellant's Reply Br. 15 (quoting *U.S. Dep't of Homeland Security*, *The Importation of Tableware, Kitchenware, Other Household Articles and Toilet Articles of Plastics* 9, https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/icp031_3.pdf). However, S.C. Johnson agrees that this court need not afford deference to Customs' website.

---

[4] We additionally note that *SGI* was superseded by statute when HTSUS heading 4202 was amended by Presidential Proclamation to include "insulated food or beverage bags." Proclamation 7515, 66 Fed. Reg. 66,549, 66,619 (Dec. 18, 2001), *as corrected by* Technical Corrections to the Harmonized Tariff Schedule of the United States, 67 Fed. Reg. 2008 (Jan. 15, 2002). *SGI*'s conclusion that insulated cooler bags are not classifiable under HTSUS heading 4202 because the provision "[did] not include containers that organize, store, protect, or carry food or beverages," 122 F.3d at 1472, is therefore no longer good law.

We conclude that HTSUS heading 3924 encompasses goods of plastic commonly found in the home and affirm the Trade Court's determination that the heading is an *eo nomine* provision.  ARI 1(a) therefore does not apply.  We also agree that the sandwich bags are *prima facie* classifiable under HTSUS heading 3924.

III

Because the Trade Court concluded that the sandwich bags were *prima facie* classifiable under both HTSUS headings, it applied GRI 3 to determine which heading provided the more specific description of the products.  The Trade Court believed that HTSUS heading 3923 describes the bags more specifically than HTSUS heading 3924.  Neither party challenges the Trade Court's determination that HTSUS heading 3923 "has requirements that are more difficult to satisfy and describe the article with a greater degree of accuracy and certainty."  J.A. 24.

We therefore affirm the Trade Court's determination that the sandwich bags are properly classified under HTSUS Heading 3923.

**AFFIRMED**